RINN v. NEW YORK LIFE INS. CO.
No. 6025.

Circuit Court of Appeals, Seventh Circuit.
April 12, 1937.

Rehearing Denied May 4, 1937.

John E. Owens and Thomas L. Owens, both of Chicago, Ill., for appellant.

Homer H. Cooper, Wendell J. Brown, and George A. Reilly, all of Chicago, Ill., and Louis H. Cooke, of New York City, for appellee.

Before EVANS, Circuit Judge, and BALTZELL and BRIGGLE, District Judges.

EVANS, Circuit Judge.

The narrow and interesting question presented upon this appeal is the right of the administrator of an annuitant, who died a few years after the issuance of the annuity policy, to recover the balance of the premium not consumed in payments to annuitant during his life. The appeal is from orders sustaining appellee's motion to dismiss certain counts in appellant's separate action in chancery and at law. The action was begun in the state court and removed to the Federal court.

The Facts. Appellee, on May 21, 1930, issued to appellant's intestate an annuity policy in consideration of a single premium payment of $48,794.40. It paid insured $300 per month from June 14, 1930, until April 14, 1934, or a total of $14,100. This left a difference of $34,-694.40 between the amount of the premium received and the annuities paid. The insured's administrator, the appellant, seeks to recover this amount with interest. The District Court sustained a motion to dismiss the causes of action in equity and at law.

The annuity contract is herewith set forth in full:

"New York Life Insurance Company
A Mutual Company
Agrees to Pay
to Maurice B. McCarthy during the lifetime of said Maurice B. McCarthy, the Annuitant, An Annuity of Thirty-six Hundred Dollars payable in equal Monthly payments of Three Hundred Dollars each; the first payment to be made on the Fourteenth day of June Nineteen Hundred and Thirty if the Annuitant is then living, and subsequent payments on the Fourteenth day of Each Month in every year thereafter, said Annuity terminating with the last Monthly payment preceding the death of the Annuitant. No proportionate annuity payment will be made to the day of death of the Annuitant.

"If annuity payments are to be made to any other than the Annuitant, or if the Company's check for any annuity payment is not to be indorsed personally by the Annuitant, the Company reserves the right to require satisfactory evidence that the Annuitant is living on the date the annuity payment falls due.

"This Annuity is granted upon the declaration that the Annuitant was born on the Seventh day of September, One Thousand Eight Hundred Seventy-Seven and if such declaration shall be found incorrect then the amount of Annuity payable under this contract shall be such as the single premium paid would have purchased at the correct age. Any overpayment or overpayments by the Company with interest thereon at the rate of six per cent (6%) per annum, shall be charged against the payments to be made after adjustment.

"This policy constitutes the entire contract between the parties and does not participate in the surplus of the Company.

"All benefits under this contract are payable at the Home Office of the Company in the City and State of New York.

"No agent is authorized to make or to modify this contract.

"The reserve held by the Company for this Annuity contract shall be calculated on McClintock's tables of mortality among annuitants, with interest at 3½%.

"This contract is made in consideration of the payment in advance of the single premium of Forty-Eight Thousand Seven Hundred Ninety-four 40/100 Dollars to be made only by bank draft or certified check to the order of New York Life Insurance Company, in exchange for its official premium receipt signed by the President, a Vice-President, a Second Vice-President, a Secretary or the Treas-

urer of the Company and countersigned by the Cashier of its Branch Office.

"In Witness Whereof the New York Life Insurance Company has caused this contract to be signed this Twenty-first day of May Nineteen Hundred and Thirty.

"Frederick M. Johnson, *Secretary.*
"Darwin P. Kingsley, *President.*
"S. W. Winnie, *Registrar.*"

(a) Appellant contends that the annuity contract contemplated a particular reserve of the amount of insured's premium, the balance remaining therein to belong to assured's estate on his death— if such were not the case, the contract would be lacking in mutuality and would be fraudulent and void.

(b) Appellant also contends that the contract, being ambiguous, should be construed in assured's favor; it would have been simple for the company to have provided that any balance remaining due on annuitant's death should become the insurer's.

(c) It is also appellant's contention that the sale of annuities constitutes either the sale of insurance or of a "security." If it be the former, its form should have been filed with the Insurance Superintendent. Smith-Hurd Ill.Stats. c. 73, § 264; Ill.Rev.Stat.1935, c. 73, par. 378. If the latter, the requirements of the Blue Sky Law (Smith-Hurd Ill.Stats. c. 121½, § 96 et seq.) should have been met.

The opinion of the court in Rishel v. Pac. Mutual Life Ins. Co., 78 F.(2d) 881 (C.C.A.10), so aptly applies that we would unnecessarily and improperly add to the volume of reported judicial opinions if we were to restate the reasons and conclusions of that case. We accept that opinion as embodying the correct statement of the applicable law. This last statement has no reference to the alleged bad faith and fraud allegations and proof discussions of the opinion, because no such issue is before us.

As bearing on the intent of the parties, the following facts are significant:

1. The insured's promise to pay is for the period "during the *lifetime* of the annuitant."

2. The annuity *terminates* "with the last monthly payment *preceding the death* of the annuitant. *No* proportionate annuity payment will be made to the day of death."

3. If the payment is to be made to another than the annuitant, the company may require "satisfactory evidence that the annuitant is *living* on the date the annuity payment falls due."

4. No provision is made anywhere for the payment of the unexpended balance of the premium upon the event of the death. If a refund were contemplated, it would have been natural to have designated a beneficiary as the recipient or provided that the estate receive the same.

Appellant argues from the contract provision "The *reserve* held by the Company for *this* Annuity contract shall be calculated on McClintock's tables of mortality among annuitants, with interest at 3½%" that each annuity policy has its own precise reserve, not to be intermingled with the reserve of another policy, and, upon annuitant's early demise his estate was entitled to the balance remaining in said reserve.

This view must be rejected because the major premise is unsound. Each policy does not have its separate, individual reserve. Appellee's interest computations were applicable to all policies of this class. Its contract was based on an average life's expectancy. The insured would have been required to pay no additional premium even though he survived ten years beyond his computed life's expectancy.

The applicable Illinois insurance statute (chapter 73, § 266, Smith-Hurd Ill.Stats.) as it existed in 1930 expressly excluded annuity policies.

The Blue Sky Law did not cover annuity insurance contracts issued by insurance companies (Laws Ill.1919, p. 351, § 2, as amended by Laws 1925, p. 549, § 1 [Smith-Hurd Ill.Stats. c. 121½, § 97 and note; Cahill's Ill.Rev.Stat.1929, chap. 32, par. 255]).

The conscionableness of an insurance contract is to be determined as of the date of its execution. Insured was 53 at the time of the issuance of the policy, and had he lived 14 years—until he was 67—he would have received sums equal to the premium by him paid. According to the mortality tables he had a life's expectancy of 19½ years.

The judgment is affirmed.