JOHN HANCOCK MUT. LIFE INS. CO. v.
HELVERING, Com'r of Internal
Revenue.

No. 7904.

United States Court of Appeals for the
District of Columbia.

Decided May 11, 1942.

Mr. David R. Shelton, of Washington, D. C., for petitioner.

Mr. Benjamin M. Brodsky, Special Assistant to the Attorney General, with whom Mr. Samuel O. Clark, Assistant Attorney General, and Mr. J. Louis Monarch, Special Assistant to the Attorney General, were on the brief, for respondent. Messrs. Sewall Key, Special Assistant to the Attorney General, J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and Robert L. Williams, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., also entered appearances for respondent.

Before MILLER, VINSON, and EDGERTON, Associate Justices.

VINSON, Associate Justice.

Petitioner is a corporation engaged in the business of writing life insurance. One Bert Hanna, now deceased, entered into three life insurance contracts with petitioner. He designated certain beneficiaries, but reserved the right to change them in himself. Shortly before his death he chose a certain type of settlement option. This option provided that the amounts of the policies at insured's death be left on deposit with the Company. The Company guaranteed 3½ percent interest, which was to be paid in equivalent monthly amounts to his wife for her life, then to his nephew and two nieces. There were provisions for further contingencies and for disposition of the principal, neither of which is now relevant. The deceased apparently could have subsequently changed the method of settlement, but he did not. The insured had similar policies with four other companies.

The executrix filed an estate tax return which included the amount receivable by all insurance beneficiaries in excess of $40,000. The amount reported has not been disturbed by respondent.

The estate has been insolvent at all times. None of the federal estate tax has been paid. The insurance monies, however, greatly exceed the amount of the tax. Hence it appears that the Government is certain of receiving all the revenue due it. The problem who is now liable remains.

Petitioner was mailed a notice of liability; the proposed assessment was stated at $13,881.43. Six weeks later petitioner was mailed a statement that the amount was $5,002.46.

When a contest resulted, the Board of Tax Appeals held petitioner liable for the $5,002.46, with three members dissenting. Upon reconsideration Honorable Eugene Black, who had written the Board's opinion, wrote a dissent. The final vote holding petitioner liable was apparently 8-7.

 Normally the federal estate tax is paid by the executor from the funds of the estate. If for some reason, such as here where the estate is insolvent, the executor does not pay the tax, the statute has further provisions which come into play. The most significant language for this case is that of subsection 315(b).[1]

"If

(1) except in the case of a bona fide sale for an adequate * * * consideration * * *,

the decedent makes a *transfer,* by *trust* or otherwise, of any property * * * intended to take effect in possession or enjoyment at or after his death, * * * *or*

(2) if insurance *passes* under a contract executed by the decedent in favor of a specific *beneficiary,* and

if in *either case* the tax in respect thereto is not paid when due, then the *transferee, trustee,* or *beneficiary* shall be personally liable for such tax,

and such property,

to the extent of the decedent's interest therein at the time of such *transfer, or*

to the extent of such *beneficiary's* interest *under* such contract of *insurance,*

shall be subject to a like lien equal to the amount of such tax. * * *" [Italics supplied]

The imposition of liability appears to follow two lines. First is the case where decedent makes a *transfer* by *trust* or otherwise. Second is the case where *insurance passes* under a contract to a specific *beneficiary.* These two cases are set-off by "(1)" and "(2)". If the tax has not been paid, it is provided that in *either case* the *transferee, trustee,* or *beneficiary* is personally liable. The statute proceeds to impose a lien on the estate *property* to the extent of *decedent's interest* at the time of *transfer or* to the extent of the *beneficiary's interest* under the *insurance* contract. It is clear that an insurance beneficiary is liable. The structure of the subsection is very persuasive that, where insurance is involved, he is the only one who is personally liable.

Petitioner is not a beneficiary, and there are beneficiaries. The Government argues, in spite of this, that petitioner is liable. It argues that the two lines of tax imposition are not water-tight compartments, that the terms "transferee" and "trustee" must be included with "beneficiary" even in the case of insurance, and that all three words should be interpreted broadly so as to mean, in ef-

---

[1] The tax is for the year 1934. The Commissioner claims that petitioner is liable for the tax under Sections 315 and 316 of the Act of 1926, as amended. The corresponding sections of the present Internal Revenue Code are 827 and 900, 26 U.S.C.A. Int.Rev.Code, §§ 827, 900.

fect, anyone is liable for collection purposes who may hold, control, or be a conduit of the estate property, whatever its type. The Government stresses the transferee category as embracing petitioner. Incidentally the Government suggests that petitioner is a trustee.

To decide if petitioner is a transferee, it will be helpful to consider the possible types of transferees. (1) Most transferees receive estate bounty from decedent. Section 316 of this statute, for example, while setting out the procedure for collecting from a transferee defines that term as including heir, legatee, devisee, and distributee.[2] (2) A transferee might include one who represents the recipient of bounty. In this class would be a trustee. But the statute names a trustee specifically, and names him while talking about transfers and transferees. Possibly there are fiduciaries representing the recipients of bounty other than trustees who are embraced by the term transferee. (3) Another possible transferee would be one who conditionally holds a part of the estate, not for his own benefit, nor to represent another. This transferee would be something like the holder of property in escrow. (4) Lastly a transferee might be anyone, not classified above, to whom the decedent by his action or by law *transferred* something for some purpose.

Petitioner's only chance of being a transferee is under (2) or (4), but has anything been transferred to petitioner? Petitioner argues that it received no asset from decedent's estate and that it gave a quid pro quo. Insofar as this argument attempts to put petitioner within the exception of bona fide sales, we reject it, but insofar as it tends to show no transfer we now consider it.

We do not propose to discuss exhaustively the nature of insurance in determining whether something was transferred to petitioner. Only one case has been called to our attention which discusses this issue.[3] That the case is not on all fours is recognized by the Government's brief which refers to the reasoning of the opinion as establishing the existence of a transfer in the instant type of case. Nonetheless the opinion of the Board, now repudiated by its author, and the Government here rely heavily upon the appellate court's decision in that case. It is true that the reasoning in a broad way lends support to the Government's position. The conclusion is that upon the insured's death there is a transfer of the policy proceeds to the company. The dissenting opinion is vigorous in its attack upon this result. It in turn takes the position that although the insured pays premiums, nothing is transferred to the insurance company when an insured dies; in fact, at his death the assets of the insurance company are not increased, rather its duties as a debtor begin. These were the views expressed by the Appellate Division while affirming the Surrogate in a 3-2 decision. The New York Court of Appeals affirmed the order without opinion. A state statute rather than the instant federal statute was being applied. There were several significant differences between that case and this: the one "in possession" of the estate property in the state statute may have a different meaning from the "transferee" in the federal Act; the executor had paid the tax; he was proceeding against the insurance companies; the beneficiaries were parties to the proceedings. With such a case the nearest analogy, the instant case is essentially one of first impression even as to the reasoning on whether anything was transferred.

Insurance cannot be completely analogized to other estate property in any satisfying manner. There is no res that goes from decedent to his estate and on to his devisee or legatee. True, as long as the insured pays his premiums (and the company has no contractual right to enforce this consideration from the insured) part of the money usually builds up an "equity" that may be accumulated, cashed, or diverted into paid up protection, and when the insured dies this "equity" may in a sense be transferred to his beneficiaries who have an important "claim" against the company. We do not see how it is transferred to the insurance company in any fashion. Even in the hands of the beneficiary there are many factors to the size of this claim other than the number of dollars the insured actually put into the "estate". That's insurance for you. Likewise, the size of the optional settlement may be contingent upon the longevity of the beneficiary. This insurance equity is not like an estate of realty, securities, or jewelry. There is much difference between the insurance rights left for X and

---

[2] § 316(e), compare 26 U.S.C.A. Int. Rev.Code, § 900(e).

[3] In re Scott's Estate, 158 Misc. 481, 286 N.Y.S. 138; In re Scott's Will, 249 App.Div. 542, 293 N.Y.S. 126, affirmed without opinion 274 N.Y. 538, 10 N.E. 2d 538. (1937) 37 Col.L.Rev. 866.

the willing of a lot to Y. While Y is transferred what decedent had, X receives something much different than decedent ever, or could have, had. And the insurance company receives nothing from decedent at his death. We believe that the insurance company is not a transferee because nothing is transferred to it.

If some type of thing could be found that in some way went to petitioner, we would remain convinced that petitioner is not a transferee within the intendment of the statute. That conviction comes partly from the difference we have just pointed out and the difficulty of finding some transfer, and partly from our belief that Congress, aware of the difference, has made a distinction.

■ As has been pointed out, the usual transferee upon death is a recipient of bounty. When a recipient of bounty receives insurance he is called a beneficiary. Subsection 315(b) not only definitely recognizes him but sets up his case in the alternative with transferees. "If (1) * * * the decedent makes a transfer, * * * or (2) if insurance passes * * * in either case * * * the transferee, * * * or beneficiary shall be personally liable * * * and such property, to the extent of the decedent's interest [when a transfer] * * *, or to the extent of such beneficiary's interest [when insurance] * * * shall be subject to a * * * lien * * *." It will be noted that the subsection further recognizes the difference through the choice of verbs. It states, "if * * * the decedent makes a *transfer* * * * of any property" and "if insurance *passes* under a contract". [Italics supplied] Thus we think that Congress said in this subsection that the only transferee, in the case of insurance, is the beneficiary.

That Congress intended the beneficiary to be liable but not the insurance company is further illustrated, we believe, by Section 314.[4] This section establishes liability where the executor, contrary to the case here, pays the tax; " * * * the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate. If there is more than one such beneficiary the executor shall be entitled to recover from such beneficiaries in the

same ratio." The statute has no similar provision allowing the executor to recover from an insurance company. Likewise, the statute has no complementary provision that where an insurance company pays the tax it may proceed against the beneficiary.

■ Section 302 further supports the proposition that where insurance is involved the only transferee is the beneficiary. The Government argues that the consideration of Section 302, which states what is to be included in gross estate, with Section 315(b), mixes the philosophies of tax imposition and of tax collection. It is true that different factors must be taken into account in the two classes of problems, but that is not to say they can never be compared to observe the lay of the land. We feel that both sections show that Congress regarded an insurance estate as of a distinct character. The parallel is strong and to disregard it would be to stop short in the search for the intendment of Section 315(b).

"Section 302. [§ 811.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *

"(c) To the *extent of any interest* therein of which the decedent has at any time made a *transfer,* by *trust or otherwise,* * * * intended to take effect in possession or enjoyment at or after his death, * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the *amount receivable* by all other *beneficiaries as insurance* under policies taken out by the decedent upon his own life."[5] [Italics supplied]

This, in our opinion, shows that Congress was aware of the special nature of an insurance estate. Insurance had to be included in the gross estate to make the estate tax work, but because of its character it could not be treated exactly like other estate property, and it was not desirable to employ the same terminology.

What has already been considered convinced us that Congress meant that the beneficiary alone was to be liable in the case of the insurance estate. Then a study of the legislative history revealed conclusively the

---

4 The corresponding language will be found in § 826(c) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 826(c).

5 Compare § 811(c) and (g) of the Code, 26 U.S.C.A. Int.Rev.Code § 811(c, g).

suspected relationship of Section 302(g), the part of 314 that is relevant here, and the enlarged 315(b). That relationship shown by a comparison of the 1916 and 1918 Acts leaves no room to doubt the sole liability of the beneficiary.

| The 1916 Act provided: | The 1918 Act provided: | "Sec. 209. [Compare with § 315 (b)] | "Sec. 409. [Compare with § 315(b)] |
|---|---|---|---|
| "Sec. 202. [Compare with § 302] That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * : | "Sec. 402. [Compare with § 302] That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * — | * * * | * * * |
| "(b) [Compare with § 302 (c)] To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has created a trust, * * * intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale * * *. | "(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * * intended to take effect in possession or enjoyment at or after his death * * *, except in case of a bona fide sale * * *. | "If the decedent makes a transfer of, or creates a trust with respect to, any property * * * intended to take effect in possession or enjoyment at or after his death (except in the case of a bona fide sale * * *) and | "If (a) [Compare with (1)] the decedent makes a transfer of, or creates a trust with respect to, any property * * * intended to take effect in possession or enjoyment at or after his death (except in the case of a bona fide sale * * *) or |
| | "(f) [Compare with § 302(g)] To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life. | | "(b) [Compare with (2)] if insurance passes under a contract executed by the decedent in favor of a specific beneficiary, and |
| | "Sec. 408. [Compare with § 314] * * * If any part of the gross estate consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate. If there is more than one such beneficiary the executor shall be entitled to recover from such beneficiaries in the same ratio. | if the tax in respect thereto is not paid when due, the transferee or trustee shall be personally liable * * *, | if in either case the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable * * *, |
| | | and such property, | and such property, |
| | | to the extent of decedent's interest therein at the time of such transfer, | to the extent of the decedent's interest therein at the time of such transfer, or |
| | | | to the extent of such beneficiary's interest under such contract of insurance, |
| | | shall be subject to a like lien equal to the amount of such tax. * * * " [6] | shall be subject to a like lien equal to the amount of such tax. * * * " [7] |

Thus we find that when insurance was added to the gross estate by the 1918 Act, a new provision came into the statute allowing the executor to recover from the beneficiaries, and Section 409, the successor to 209, and the forerunner of 315, was enlarged to create liability on the insurance beneficiaries. Not only was the section enlarged to include the beneficiaries, but also it was divided to separate them from the recipients of bounty who were already made liable. All of this was done when Congress

[6] 39 Stat. 777, 778, 780.

[7] 40 Stat. 1097, 1098, 1100, 1101. This Act was introduced in 1918 and is usually referred to as the 1918 Act, although it was approved on February 24, 1919. 40 Stat. 1057, 1096, 1152.

for the first time put insurance in favor of named beneficiaries into gross estate.

Any lingering doubt that this was done by accident and not with "malice aforethought" should be dispelled by the report of the Committee on Ways and Means. "The gross estate section has been amended to specifically include (1) insurance receivable by the executor under policies taken out by the decedent upon his own life and (2) insurance in excess of $40,000 receivable by all specific beneficiaries under policies taken out by the decedent upon his own life. (1) Insurance payable to the executor or to the estate is now regarded as falling within section 202 (a) of the existing statute and this construction of the existing statute is now written into the new bill for the sake of clearness. The amendment will serve the further purpose of putting on notice those who acquaint themselves with the statute for the purpose of making more definite plans for the disposition of their property. (2) The provision with respect to specific beneficiaries has been included for the reason that insurance payable to such beneficiaries usually passes under a contract to which the insurance company and the individual beneficiary are the parties in interest and over which the executor exercises no control. Amounts passing in this way are not liable for expenses of administration or debts of the decedent and therefore do not fall within the existing provisions defining the gross estate. It has been brought to the attention of the committee that wealthy persons have and now anticipate resorting to this method of defeating the estate tax. Agents of insurance companies have openly urged persons of wealth to take out additional insurance payable to specific beneficiaries for the reason that such insurance would not be included in the gross estate. A liberal exemption of $40,000 has been included and it seems not unreasonable to require the inclusion of amounts in excess of this sum."[8] Later in the report it is stated that other changes have been made in behalf of an equitable, uniform, and effective administration of the law, for instance, giving the executor a right of contribution from the specific beneficiary.[9]

In respect of the instant problem this is the critical change in the statute. There was an entirely different inheritance tax statute in 1898,[10] amended in 1901,[11] and repealed in 1902.[12] Today's law follows the structure of the 1916 Act. The recognition of the distinctive insurance estate came in 1918. The provisions have been re-enacted, with only changes that are not relevant here, in the Act of 1921,[13] of 1924,[14] and of 1926,[15] as amended,[16] and are a part of the present Internal Revenue Code.[17] Amendments, their substance irrelevant here, show the parallelism of Sections 302 and 315(b) and the dichotomy of the transferee, beneficiary categories.[18]

Likewise, petitioner cannot be called a trustee. The same reasons that foreclose his classification as a transferee apply. The term "trustee" is grouped with that of

---

[8] H. R. Rep. No. 767, Committee on Ways and Means, 65th Cong., 2nd Sess. (1918) 22.

[9] Id. at 23.

[10] 30 Stat. 464.

[11] 31 Stat. 946.

[12] 32 Stat. 97.

[13] 42 Stat. 277, 278, 279, 282, 283.

[14] 43 Stat. 303, 304, 305, 311, 312.

[15] 44 Stat. 69, 70, 71, 79, 80.

[16] See 26 U.S.C.A. Int.Rev.Acts, 1924 to Date, §§ 302(c) and (g), 314, and 315 (b).

[17] 26 U.S.C.A. Int.Rev.Code, §§ 811(c) and (g), 826(c), and 827(b).

[18] The first part of Section 402(c) [compare 302(c)] of the 1918 Act read: "To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, * * *." (40 Stat. 1097). The first part of the second paragraph in Section 409 [compare 315(b)] of the 1918 Act read:

"If (a) the decedent makes a transfer of, or creates a trust with respect to, any property * * *." (40 Stat. 1101). The identic wording and arrangement was used in 1921 (42 Stat. 278, 283). In 1924 the identic wording was used. The number of the first section was changed to 302(c) (43 Stat. 304), and the second to 315; the second paragraph of 315 was made (b), thus necessitating a change from "if (a)" to "if (1)" (43 Stat. 312).

In 1926, Section 302(c) was changed to read: "To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, * * *." (44 Stat. 70). At the same time 315 (b) was changed to read: "If (1) the decedent makes a transfer, by trust or otherwise, of any property * * *." (44 Stat. 80).

For a similar example of parallelism see the 1932 amendments enlarging the scope of transfers "in contemplation of death." 47 Stat. 279, 280.

"transferee" in contradistinction to "beneficiary" in Sections 302(c) and 315(b). A part of the statute, for example, reads, " * * * if decedent makes a transfer, by trust or otherwise * * *."

In addition, unless there is express language and behavior to the contrary we believe that the primary relationship of an insurance company and a beneficiary is debtor-creditor rather than trustee-cestui. Insurance is important; it is extensive; its agents advise and persuade many people. It undoubtedly has a lot of what is called public interest, and so we have governmental regulation and supervision. But when a policy matures so that the company is subject to a claim, there is usually established primarily a debtor-creditor relationship rather than a trustee-cestui one.[19]

█ The considerations which we have presented, the grammatical construction of the critical subsection 315(b), the plan of the whole statute, other specific parts, the legislative history, the relationship of the Government, executor, decedent, petitioner, and the beneficiaries, lead us to hold that petitioner is not liable either as a transferee or as a trustee. The basis of the Government's contention to the contrary is largely, if not entirely, convenience of collection. There are many counter-considerations even on this score.

At the outset this method of collection not merely requires that the petitioner shall have the money, a sum certain, available as in garnishment or escrow, but creates personal liability. Personal liability is a matter not to be put lightly here, there, or anywhere.

Assuming that the courts would see to it that the insurance company was reimbursed, which the statute does not do as in the case of an executor, it still would not be a satisfactory situation because, as already indicated, petitioner is not primarily a fiduciary. The beneficiary would have little assurance that the company would fully represent him when the liability or its amount was being determined. The law requires the trustee to look out for the cestui. The law requires the executor to look out for the legatee. While we expect insurance companies to do the right thing, they are in no such stringent fiduciary relationship to their creditors.

If, for example, the insurance company had written one of these deferred instalment contracts which guaranteed a high rate of interest, it might be to its advantage to pay as much tax as possible to reduce the principal fund and then to reimburse itself by decreasing the payments to the beneficiary. We do not say that insurance companies would generally do this, but that is where their purse-interest might be. The law is usually concerned with setting up relationships on the bases of interests. Then under the idea that "where your treasure is, there will your heart be also," the merits of particular controversies will largely take care of themselves. Under this test the insurance company is not a proper party to contest the tax. In this case it should be remembered that the liability has been said to be by the Government, first, $13,881.43, then $5,002.46.

A further argument which we merely mention in passing is that if the Government's new method of collection were sustained, the beneficiary would not have the opportunity that other bounty recipients have when the executor does not pay the tax, of deciding whether he wants to pay the tax out of the new property, out of old holdings—perchance a white elephant, or out of cash on hand. Indeed an insurance beneficiary has this option when the executor does pay the tax. Here, although the beneficiary desired the investment, it would be reduced without consultation. It may be thought that an inheritor should not be too fussy, and that after all it is an estate tax, not an inheritance or a personal property tax, but there is no special reason, where others have a choice, that it should be denied to this beneficiary unless the statute clearly makes it that way.

Throughout this proceeding it has apparently been conceded, at least the Government has said nothing to dispel the assumption, that if the beneficiaries had received a lump sum payment, the Commissioner would have proceeded against them rather than the petitioner. We believe that the relationship between the insurance company and the Government should not be changed because the former is an instalment debtor to a third party rather than an immediate demand debtor, simply for the convenience of the Commissioner, where new tax liability is created, and new administrative burdens are put upon the nongovernmental party.

In fact this appears to be the first time that the Commissioner has proceeded against

---

[19] See Land, Life Insurance Option Settlements Trusts or Debts (1942) 42 Col.R. Rev. 32.

insurance companies even where the insurance settlement is deferred. The opportunity for the Commissioner to make his present argument has existed for a long time. While the 1916 Act had no insurance terminology, since the 1918 Statute, Section 315(b) has had the delineation that we have stressed between transferees and beneficiaries.

■ While we believe that agencies should not be bound by the policy decisions of their predecessors any more than a legislature can bargain away its discretion for the future, there is certainly much in long administrative practice, particularly statutory interpretation, that can work against as well as for the governmental body. Naturally when the statute is clear and there has been an erroneous interpretation, there is a duty to change that interpretation. If a statute is ambiguous, a long standing, consistent interpretation and re-enactment make that construction the meaning of the statute. Here, we think that the statute is clear, that the old practice was in conformity and that the new method of collection is not authorized. Against this stands the view that the statute can be stretched to embrace this policy of convenience of collection. "We must be wary against interpolating our notions of policy in the interstices of legislative provisions."[20]

Reversed.

20 Scripps-Howard Radio, Inc., v. F. C. C., April 6, 1942, 62 S.Ct. 875, 880, 86 L. Ed. ——.