HUGHES et ux. v. SUN LIFE ASSUR. CO. OF CANADA et al.
No. 9042.

Circuit Court of Appeals, Seventh Circuit.
Dec. 24, 1946.

Robert J. Sheran, of Mankato, Minn., Hubert E. Page, of Chicago, Ill., and Gallagher, Farrish & Sheran, of Mankato, Minn., for appellants.

Floyd E. Thompson and Max Bloomstein, Jr., of Chicago, Ill. (Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., of counsel), for appellees Meta S. Hughes and others.

John R. Heath, of Chicago, Ill. (Cameron, Heath & Burry, of Chicago, Ill., of counsel), for appellee First Nat. Bank of Chicago.

Arthur D. Welton, Jr., of Chicago, Ill. (Winston, Strawn & Shaw, of Chicago, Ill., of counsel), for appellee Sun Life Assur. Co. of Canada.

Before EVANS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiffs brought this action to declare defendants subject to the duty of recompensing plaintiffs for money paid in settlement of a claim for federal estate taxes on account of the transfer of $945,000 by Mary H. Hughes during her lifetime. The case was tried by the court. The court made special findings of fact, rendered its conclusions of law thereon, and entered a decree dismissing plaintiffs' complaint for want of equity. To reverse the decree, plaintiffs appeal.

The pertinent and controlling facts found by the court and amply supported by the evidence are that on April 16, 1928, Mary H. Hughes applied to defendant Sun Life for an annuity on the life of plaintiff, Frank C. Hughes, her son. Her application was accompanied by the single premium of $945,000. This sum became the property of Sun Life and was added to the common fund of the company; it ceased to have any separate identity and became part of the company's general assets. Thereafter she executed an "alteration of application." May 5, 1928, Sun Life delivered a contract to her under which it bound itself to pay an annuity of $31,500 during the lifetime of Frank C. Hughes, payable at the rate of $2,625 per month, and upon his death, to pay $900,000. The contract also provided that the $900,000 should be left

with Sun Life until the death of the survivor of four of her children and their spouses. Upon the death of the last survivor of the four children and their spouses, the $900,000 then payable is to be divided into as many equal parts as there are children then surviving of the sons and daughter of Mary H. Hughes, the distribution to be made to her living grandchildren per capita and among the descendants of her deceased grandchildren per stirpes. Mary H. Hughes died on December 15, 1935, and left surviving her Frank C. Hughes, George A. Hughes, William V. Hughes, Edmond A. Hughes and Helen Dulany, her sons and daughter. Edmond, however, had no interest under the contract.

After the death of Mary H. Hughes, a claim for deficiency in estate taxes was asserted by the Commissioner of Internal Revenue. The claim came before the Board of Tax Appeals, upon the petition of the administrator of the estate of Mary H. Hughes. The Board, on August 8, 1941, Hughes' Estate v. Commissioner of Internal Revenue, 44 B.T.A. 1196, decided that the value of the annuity contract at the date of Mary H. Hughes' death was $900,000 and was, for estate purposes, includable in her estate, and on October 2, 1941, a judgment was entered against the estate of Mary H. Hughes for $217,214.85, plus interest from March 13, 1937. There were no assets in her estate with which to pay the judgment. From this judgment an appeal was perfected to this court. Prior thereto an offer to pay $165,000 in compromise of the deficiency claim was made on the ground that there was doubt as to liability and collection. The Government accepted the offer, the amount required to consummate the settlement was paid, and the appeal was dismissed by stipulation.

So as to better understand the finding that liability was doubtful, it is well to note that before the claim of the administrator of the estate of Mary H. Hughes came before the Board of Tax Appeals, it was generally considered that the decision in the case of May v. Heiner, 281 U.S. 238, 50 S. Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, states the law. In the May case the court held that retention by a grantor of the income

for life of an irrevocable trust did not, for tax purposes, result in the inclusion of the corpus of the trust in the estate of the grantor. Thereafter, in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, it was held that the fact that the grantor of a trust estate had a reversionary interest therein (in the form of a contingent remainder) required the conclusion that the transfer was intended to take effect at or after death and therefore was subject to estate tax. The Board, when it considered the claim of the administrator of the Hughes estate, concluded that the Hallock case overruled the May case, but the Board stated that if the May case were the law, then the value of the annuity contract was not includable in the estate. February 2, 1943, the Board (by then the Tax Court) handed down its decision in Estate of Edward E. Bradley v. Commissioner, 1 T.C. 518, expressly overruling the Hughes case, and decided that the May case must be considered the law and that it was not overruled by the Hallock case. We observe also that in the Hughes case, the Board did not consider that the payment by Mary H. Hughes of the purchase price for the annuity contract was the transfer resulting in the tax. See 44 B.T.A. 1196, 1200.

The settlement resulted from negotiations with representatives of the Commissioner and the plaintiff and his brothers and sister who were interested in the annuity contract, as well as Edmond A. Hughes, who had received some of the other property transferred by their mother. By the end of November, 1941, the Treasury Department had indicated likelihood of a settlement for $165,000 of the claim which then, with interest and $13,000 for fees of counsel, amounted to $275,000, so that consummation of the settlement required $178,000. An agreement was reached fixing Edmond's share at $13,000 and the shares of each of the other four children at $41,125. Plaintiffs were without funds with which to contribute their share until George A. Hughes agreed to borrow the amount necessary from a Chicago bank and lend it to plaintiffs, so as to enable them to make their contribution to the settlement. The agreement con-

tained the following: "The beneficiaries believe that a settlement * * * for a flat sum of $165,000 may be made. The beneficiaries desire to determine their respective contributions thereto and to raise the money necessary to consummate such settlement." The loan agreement made between plaintiffs and George A. Hughes, providing for the funds to consummate the settlement, was in execution of the agreed apportionment of the amounts to be paid. Neither the settlement agreement nor the loan agreement would have been made by George A. Hughes, William V. Hughes, and Helen Dulany except on the basis that the benefits under the annuity contract would not be disturbed, directly or indirectly, by any attempt to compel reimbursement.

The court concluded, inter alia, that defendant was not a trustee of the fund and had neither assumed nor otherwise become subject to any fiduciary duty or obligation by reason of the annuity contract; that the relationship between defendant and the various persons entitled to receive payment under the contract was solely that of debtor and creditor; and that defendant was never subject to any liability or obligation to make payment of the estate tax claim.

Plaintiffs contend that the decision of the Board of Tax Appeals is binding not only upon the representative of the estate of Mary H. Hughes, but upon the transferee or other persons benefiting as a result of the transfer. They assume that defendant Sun Life is either a transferee or a trustee within the meaning of § 827 of the Internal Revenue Code,[1] and argue that where the question of a transferor's liability has once been litigated, the transferee may not attack the determination of the Board collaterally.

■ In answer to this contention it will be enough to say that the annuity contract created only the relationship of debtor and creditor, John Hancock Mutual Life Ins. Co. v. Helvering, 76 U.S.App.D.C. 6, 128 F.2d 745; Crossman Co. v. Rauch, 263 N.Y. 264, 188 N.E. 748; and Roth v. Kaptowsky, 393 Ill. 484, 66 N.E.2d 664; hence, Sun Life was not a trustee, and it is clear that the only transfers contemplated by § 827(b) of the Internal Revenue Code are those where the recipient of the purported transfer is a donee. In our case, Mary H. Hughes, in good faith, for an adequate consideration, purchased the annuity contract. In such a situation, Sun Life was not a transferee within the meaning of the Act. Equitable Life Assur. Soc. v. Commissioner, 46 B.T.A. 586, and John Hancock Mutual Life Ins. Co. v. Helvering, supra. Helvering v. Tyler, 8 Cir., 111 F.2d 422, cited by plaintiffs, is not in point; hence it is not contrary. Nor can it be said that the doctrine of res judicata was applicable here, since Sun Life was not a party to the proceedings before the Board of Tax Appeals or in privity with any party to that proceeding.

Plaintiffs assert that they paid more than their just share of the tax burden and that notwithstanding the settlement agreement they are entitled to reimbursement. They argue that the effect of the settlement of the tax claim was inequitable because the entire burden of the settlement was assumed by persons who received merely the income from the fund paid Sun Life, while the contingent beneficiaries who, upon the death of the four children of Mary H. Hughes and their spouses, will be entitled to receive the principal. Section 826(b) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 826(b)[2] is invoked to support the argument.

■■ The ultimate incidence of the es-

---

[1] That statute (26 U.S.C.A. Int.Rev. Code, § 827(b) provides: "If * * * the decedent makes a transfer, by trust or otherwise, of any property in contemplation of or intended to take effect in possession or enjoyment at or after his death * * * and if * * * the tax in respect thereto is not paid when due, then the transferee, trustee, or beneficiary shall be personally liable for such tax, and such property, to the extent of

the decedent's interest therein at the time of such transfer * * * shall be subject to a like lien equal to the amount of such tax. * * * except any part sold to a bona fide purchaser for an adequate and full consideration in money or money's worth."

[2] Section 826(b) of the Code provides as follows: "(b) Reimbursement out of estate. If the tax or any part thereof is paid by * * * any person other

tate tax is a matter of state law. Young Men's Christian Ass'n v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L.Ed. 558, and Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131. Illinois has no provision in its laws relating to the incidence of the burden of federal estate tax. First National Bank of Chicago v. Hart, 383 Ill. 489, 50 N.E.2d 461, and § 826(b), under the facts in this case, have no application here; that section does not direct how the estate is to be distributed, not does it determine who shall bear the ultimate burden of the tax. Riggs v. Del Drago, supra, 317 U.S. 95, 100, 63 S.Ct. 109, 87 L.Ed. 106, 142 A.L.R. 1131. In the absence of statutory enactment directing otherwise, the federal tax must be considered as a charge against the whole of the estate and not against the individual shares. First National Bank of Chicago v. Hart, supra, 383 Ill. 489, 497, 50 N.E.2d 461.

Plaintiffs next contend that they are entitled to reimbursement even though Sun Life is not a trustee or transferee. The argument is made that by entering into the settlement agreement, plaintiffs, as to the fund in the possession of Sun Life, became subrogated to the lien of the Government.

The right of subrogation does not exist where it appears that at the time of the payment of the debt the intent was not to keep the debt alive, but to extinguish it. 50 Am.Jur. 689. Here the amount contributed by plaintiffs, as well as the amounts contributed by the other parties to the settlement of the tax burden, was to extinguish the debt due the Government, the agreement being made on the basis that the benefits under the annuity contract would not be disturbed by any attempt to compel reimbursement; consequently we believe plaintiffs' contention is without merit.

Plaintiffs have stressed other points.

than the executor in his capacity as such, such person shall be entitled to reimbursement * * * by a just and equitable contribution by the persons whose interest * * * is subject to equal or prior liability for the payment of taxes,

These we have considered, but since they do not change our conclusions, they need not be discussed.

The decree will be affirmed.

* * * it being the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution."