CHATHAM COUNTY HOSPITAL AU-
THORITY et al., Plaintiffs,

v.

JOHN HANCOCK MUTUAL LIFE IN-
SURANCE COMPANY and National
Health and Welfare Retirement Asso-
ciation, Inc., Defendants.

Civ. A. No. 2591.

United States District Court,
S. D. Georgia,
Savannah Division.

April 1, 1971.

Malcolm Maclean, Arnold C. Young, Mark M. Silvers, Jr., Connerat, Dunn, Hunter, Houlihan, Maclean & Exley, Savannah, Ga., for plaintiffs.

John M. Tatum, Hitch, Miller, Beckmann & Simpson, Savannah, Ga., for John Hancock Mut. Life Ins. Co.

Robert M. Williams, Bouhan, Williams & Levy, Savannah, Ga., for National Health and Welfare Retirement Ass'n, Inc.

## ORDER

LAWRENCE, Chief Judge.

This action is brought by Chatham County Hospital Authority and certain of its employees representing a class to recover payments made under an annuity agreement entered into between the Authority and National Health & Welfare Retirement Association in 1955. The latter is a non-profit, tax-exempt corporation organized under the laws of New York. It is licensed in that State to engage in the business of providing pension benefits to employees of contributing members in other states. The Association denies that it does or has done any business in Georgia.

Under the 1955 contract the Association agreed to maintain a retirement fund for the use and benefit of employees of the Authority in consideration of monthly contributions by the latter and by the beneficiaries. John Hancock Mutual Life Insurance Company contracted with the Association to undertake the latter's obligations by indemnifying it for its liabilities under the pension plan. Such reinsurance is permitted under New York Insurance

law. In 1969 the Association turned over to John Hancock $672,453.12 representing all contributions to-date less 4% for expenses. Claiming that the fund equitably belongs to them, plaintiffs pray that a trust be impressed thereon unless the insurer distributes same to the beneficiaries as their interest may appear. A receivership and an accounting is also sought.

By a series of amendments plaintiffs have expanded the complaint into five counts. The original complaint became Count I which, as amended, averred that the Association was not and is not authorized to issue policies of insurance. Count II claims violations of the Investment Company Act of 1940 (15 U.S.C. § 80a–1 et seq.) and the Securities Act of 1933. Count III alleges that the Association is not an insurer authorized to write or sell insurance in Georgia and is not entitled to file any defense since it has furnished no security. Ga.Code Ann. § 56–610(1) (a) and (b). Count IV charges the Association with failure to pay a $10,160 dividend owed at the end of the final year (1969) of the Authority's participation in the annuity contract.[1] Count V alleges that under Georgia law the Association is the unauthorized agent of John Hancock and that the contract of insurance is voidable. Ga.Code Ann. § 56–602.

Defendants have moved to dismiss the complaint and, in the alternative, for summary judgment. Plaintiffs likewise ask for summary judgment.

I will at the outset remark that judicial economy would be much more adequately served if this case were still in the State courts from which it was removed. Disposition of this litigation requires rulings upon unresolved questions of Georgia law as well as the construction of State statutes. I can only predict. The state courts can pronounce.

The pivotal question in the case is plaintiffs' contention that the Association is not an insurer authorized to write insurance under Georgia law and that the annuity contract entered into in 1955 is unlawful and voidable. The defendants contend that annuity contracts did not constitute the writing or selling of insurance when the Agreement between the Authority and the Association was entered into and that the present Insurance Law of Georgia is not applicable and does not operate retrospectively.

Prior to 1960 Georgia had no modern Insurance Code. There are only scattered references to annuities in the insurance statutes up to that time. A 1945 and a 1955 Act dealing with taxes on insurance premiums provided that the term "gross direct premiums" included "annuity considerations." Georgia Laws, 1945, p. 420; 1955, Extra Sess., p. 47; Ga.Code §§ 92–2509, 92–2510 (now repealed). An earlier Act, dealing with rights of creditors, stated:

"If an annuity contract, whether heretofore or hereafter issued, is effected by any person, based upon his own life, or on another life, payable to a person other than himself, the lawful beneficiary or assignee thereof, other than the person so effecting such contract, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the person effecting such contract, to the same extent and under the same conditions hereinbefore provided with reference to the proceeds and avails of policies of life, endowment, and accident insurance."

Ga.Laws, 1933, p. 181f., Ga.Code Ann. §§ 56–9057, 56–1007 (now repealed).

The laws made no attempt to define annuities or to authorize the regulation

---

1. Contributions to the fund ceased in October of that year after the Authority notified the Association of its election to terminate the contract. The Association elected to make the election effective May 31, 1969. The Authority complains that it was thereby arbitrarily excluded from the dividend. A new retirement plan with another insurer is now in effect. No employee contributions are now required.

thereof by the Insurance Commissioner. The statutes, of course, required a license to sell insurance. No insurance company "can legally transact any insurance business of any kind or character within the state, without first having procured the license required to carry on such business from the insurance commissioner of this state." Jalonick v. Greene County Oil Co., 7 Ga.App. 309, 66 S.E. 815.

Only one Georgia decision deals with the distinction between insurance and annuities. In Wolfe v. Breman, 69 Ga. App. 813, 26 S.E.2d 633 the Court of Appeals said, "Generally speaking, life insurance is a provision for death, while an annuity is a provision for life." Quoting Words & Phrases, it said that annuities are "essentially a form of investment" and that the contingency of continuance of life does "not to bring it within the classification of insurance." [2]

The Insurance Code of 1960 thus defines annuities:

"An annuity contract is one by which one party in return for a stipulated payment or payments promises to pay periodic installments for a stated certain period of time or for the life or lives of the person or persons specified in the contract, but does not cover the proceeds of life insurance no matter how payable." Ga.Code Ann. § 56–2601(1).

The Act also provides:

"No annuity, reversionary annuity or pure endowment contract, other than group annuities and except as stated in this section, shall be delivered or issued for delivery in this State unless it contains in substance each of the provisions specified in this section or contains provisions which in the opinion of the Commissioner are more favorable to contract holders." § 56–2602.

Insurers authorized to transact life insurance may also grant annuities. § 56–402. Agents are prohibited from representing unauthorized insurers and soliciting or receiving application for insurance or annuities. §§ 56–601, 56–802a.

Is the Act of 1960 applicable to annuity contracts entered into before its passage?

The Constitution of Georgia (Ga.Code Ann. § 2–302) prohibits "retroactive law." "Laws prescribe only for the future; they cannot impair the obligation of contracts, nor, usually, have a retrospective operation." § 102–104. In Insurance Company of St. Louis v. Bray, 105 Ga.App. 675, 677, 125 S.E.2d 691, 693 the Court of Appeals said:

"Inasmuch as the policy sued on in this case was written on March 3, 1959, and the loss occurred on June 13, 1959, it was not error for the trial court to charge the provisions of the law defining insurance agent as they appeared in Code § 56–501 prior to the enactment of the Insurance Code of 1960. The Georgia Insurance Code of 1960 was not intended to and could not have had any retrospective effect, and the provisions of law charged by the judge, as complained of in special ground 2, were in full force and effect at all times material in this case. Code Ann. § 56–115. Constitution, Art. I, Sec. 3, Par. 2 (Code Ann. § 2–302)."

In several decisions by federal courts rescission has been refused where an annuity failed to comply with state insurance regulations. In Rishel v. Pacific Mutual Life Ins. Co. of California, 10 Cir., 78 F.2d 881 plaintiff contended that the contracts were void because the form of the annuity contract had not been filed with the insurance commis-

---

2. For a discussion of the distinction between annuities and insurance see 3 C.J.S. Annuities § 1(b) (2); 43 Am. Jur.2d Insurance § 6, p. 70; 4 Am.Jur. 2d Annuities § 1; 1 Appleman, Insurance Law and Practice § 83. "An insurance contract is not a contract of insurance generally but the insurance laws in effect ordinarily regulate the insurance of annuities and the consideration or premium paid." Mitchell, Georgia Law on Insurance, § 4–104.

sioner of Colorado. "We are not prepared to hold," said the Tenth Circuit, "that an annuity contract is an insurance policy as used in this statute. In many respects, it is the exact converse and in common parlance the word insurance does not embrace annuities."[3] In Herman v. Mutual Life Ins. Co. of New York, 3 Cir., 108 F.2d 678 plaintiff sought to recover premiums paid on an annuity contract which had been in existence six years. Pennsylvania law provided that no annuity policy could be issued without the approval of the insurance commissioner. The court refused to set it aside, noting that plaintiff had never suggested that the issued policy offended the substantive portions of the insurance code and that there was no allegation by plaintiff that the insurance contract would have not received approval by the insurance commissioner had it been submitted.

In Haberman v. Equitable Life Assurance Society of the United States, 5 Cir., 224 F.2d 401, a Fifth Circuit decision involving Texas law, the insurer which was authorized to transact life, health, accident and annuity insurance had failed to designate an agent for service of process. The Court denied rescission, saying that there had been faithful performance by the insurer and a tender of full performance and any right to rescind was cut off.

■ In Count V of the complaint in the present case it is alleged that the Association entered into the contract as agent for John Hancock which is the true principal; that it was not licensed under Georgia law to act as an agent in procuring insurance, and that John Hancock had knowledge thereof. Under the Act of 1960 insurers are prohibited from issuing insurance in Georgia except through a licensed agent. § 56–803a(2). Contracts effectuated by unauthorized insurers are voidable except by the insurer. § 56–602. I do not think that plaintiffs have standing to assert that John Hancock is the principal. "Reinsurance involves no transaction or privity between the reinsurer and those originally assured." Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 49 S.Ct. 360, 73 L.Ed. 762. In such a case there is no "privity or relation" between reinsurer and the insured. Empire State Insurance Company v. Collins, 54 Ga. 376, 778. Section 12 of the 1947 contract between John Hancock and the Association provides: "The acceptance of reinsurance hereunder by the Reinsurer shall not create any legal relation hereunder between the Reinsurer and any employee. * * *"

■ Plaintiffs contend that the reinsurance agreement is not what it purports to be but is only a cleverly disguised agency agreement under which John Hancock is the insurance underwriter and the Association the insurance procurer. If the former is actually the insurer and the latter was merely an unlicensed agent in procuring the annuity, we have an insurer which is licensed and qualified to write insurance policies in Georgia. While the law prohibits the issuance of policies by an unlicensed agent it does not appear to void such insurance. See Ga.Code Ann. § 56–803a(1) and (2). "There is a difference of opinion in the decisions of the courts, due in some measure to the wording of the various statutes, as to whether a contract of insurance entered into by an * * * agent acting without a license required by statute is valid." Mitchell, Georgia Law on Insurance, § 15–101. It has been held that a policy of insurance written in one state on property in another state by an agent not licensed in the latter is not void where the company writing the policy was authorized to do business in the state. Hay v. Union Fire Insurance Company, 167 N.C. 82, 83 S.E. 241.

Let me return to the imperious issue in this case. When the annuity contract was entered into in 1955 between the Authority and the Association the insurance laws of this State extended to and

---

3. This case is cited with approval in Rinn v. New York Life Ins. Co., 7 Cir., 89 F.2d 924.

governed the grant of annuities. If they did not, the Act of 1960 cannot be constitutionally construed so as to invalidate an existing annuity contract.

The pre-1960 insurance laws of Georgia are vaporous and ambiguous in respect to coverage of annuity contracts. I find no legislative intent that such contracts were treated as insurance transactions. There should be a much clearer purpose of regulating such agreements as insurance than is evidenced by the pre-1960 legislation. Statutes imposing restrictions and taxes on occupations are generally strictly construed and are not to be extended by implication. Mayor & Aldermen of Savannah v. Savannah Electric & Power Co., 205 Ga. 429, 54 S.E.2d 260; Thompson v. Georgia Power Co., 73 Ga.App. 587, 37 S.E.2d 622; Forrester v. Interstate Hosiery Mills, 194 Ga. 863, 23 S.E.2d 78.

However, if the statute law of Georgia prior to 1960 was unclear on the subject, the decisional law is not. Annuities were *not* insurance. Wolfe v. Breman, *supra*. I will add that there is no evidence that the Insurance Commissioner attempted to bring annuity contracts under his control. For fourteen years the Authority itself never raised the issue of the illegality of the contract under consideration. I do not say that there is any estoppel. I am merely saying that somebody has had afterthoughts about the bargain.

■ Plaintiffs argue that the By-Laws, Article III, § 8C, authorize Supplemental Death Benefits in the form of elective term insurance. While this argument is persuasive, I must reject the theory that this provision converted the annuity of agreement to a contract of insurance. I think the option was incidental to the pension plan. Of 445 employees who participated in the retirement plan there was apparently no case of an election to take term insurance. The tail is too small to wag the dog.

■■■ I hold that the 1955 annuity agreement between the Authority and the Association was not covered by the then existing statutes and that the insurance statute of 1960 did not invalidate the 1955 contract. In other words, what was not insurance before could not be legislated into insurance. However, I do not hold that the Association may insulate itself completely from all regulation as an insurer or compliance with the 1960 law. I suggested at the argument that the Insurance Commissioner might intervene. This was not done. The Deputy Insurance Commissioner of Georgia furnished an affidavit to the effect that the contract between the Association and the Authority "is insurance as that term is defined under the laws of the State of Georgia" and that the Association is subject to all requirements placed on other insurers similarly situated. I abstain from any ruling as to whether the continued administration of the plan by the Association and the payment of annuities in the future requires it to be licensed and whether it is operating in violation of the 1960 Act.[4] Federal abstention is in order as to this phase of the litigation. This is a question for Georgia courts between the Commissioner and the Association and John Hancock. The point does not have to be reached in the present litigation.

I will deal only briefly with the other issues—the trust theory of Count I, the claim (Count II) that there was a violation of the Securities Act of 1933 and the Investment Company Act of 1940 and the failure to pay the $10,000 dividend which is the basis of Count IV. Plaintiffs press none of these contentions vigorously.

■ Annuity agreements create only the relation of debtor and creditor, not a

4. Under the 1960 statute, "An insurer, not transacting new insurance business in Georgia but continuing collection of premiums on and servicing of policies remaining in force as to residents of or risks located in Georgia, is transacting insurance in Georgia for the purpose of premium tax requirements only and is not required to have a certificate of authority therefor * * *." Ga.Code Ann. § 56–302.

trust. Hughes v. Sun Life Assurance Co. of Canada, 7 Cir., 159 F.2d 110; Moses v. Manufacturers Life Insurance Company, D.C.S.C., 298 F.Supp. 321; Life Insurance Option Settlements— Trust or Debts, 42 Col.L.Rev. 32. The contract between the Association and John Hancock permitted the former to reinsure all or any part of the benefits through insurance companies authorized to do so under the laws of New York.

■ The Securities Act of 1933 specifically exempts annuity contracts. 15 U.S.C. § 77c(a) (8); S. E. C. v. Variable Annuity Life Insurance Company, 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640. Insurance companies are not investment companies under the Act of 1940. 15 U.S.C. § 80a–3(c) (3).

■ Article IV, Sections 16–18, of the Association's By-Laws confer upon it the right, in event of reinsurance, to utilize all or any portion of dividends therefrom for operating expenses, reserve or surplus. The claim of the Authority that the failure to pay a dividend for the final year of the contract was arbitrary must be denied.

The motions of the defendants for summary judgment are granted as to Counts II, III, IV and V and each of these Counts is dismissed. Defendants' motions for summary judgment as to Count I, as amended, is overruled—at least for the time being. Plaintiffs' motion for summary judgment is denied.

Courts of equity should grant complete relief in causes in which they have jurisdiction. All persons at interest in this litigation are parties. The plaintiff-employees, who number 445, are representative of their class except for the three who apparently preferred to go along with the 1955 plan. Their rights are, of course, inviolable. The other contributors to the fund apparently want their money back. The defendants are not required to pay them but questions related to an accounting are bound to arise despite the disposition of the controlling issues in this litigation. They inhere in a case where there is a complete frustration of an annuity plan because of its termination and the subsequent substitution of a new pension plan. As of February 18, 1971, contributions by the Authority totalled $469,-389.64 and those of employees $287,401.-16. Benefits paid up to that date amount to $3,527.47. The financial stake of the individual employees in the plan is miniscule. I am advised by counsel that settlements of small annuities (that is, those that would pay less than $80.00 per year) are being made by John Hancock. It has paid out $53,945.-02 as of February 18th.

Against this background I have decided to retain jurisdiction. Within sixty days I will hold a hearing for the purpose of determining where we stand and where we are going.