**In the Matter of Joseph E. BROWN and Kimberly Jo Brown, Debtors.**

**Joseph E. BROWN and Kimberly Jo Brown, Plaintiffs-Appellants,**

v.

**Gary D. BOYN, Trustee, Defendant-Appellee.**

**Civ. No. S 88–137.**

United States District Court, N.D. Indiana, South Bend Division.

May 25, 1988.

R.W. Chamblee, Jr., South Bend, Ind., for plaintiffs-appellants.

Gary D. Boyn, Elkhart, Ind., for defendant-appellee.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

At long last this court has a bankruptcy appeal that is interesting if not exciting. The subject of this appeal is Joseph Brown's lottery winnings of 1.5 million dollars, which he will receive in the form of weekly payments of $1,000.00 from an annuity purchased by the Arizona Lottery Commission. The plaintiffs have filed their appeal pursuant to 28 U.S.C. § 158(a), seeking district court review of a bankruptcy order issued February 10, 1988, 82 B.R. 967, which held that the lottery annuity payments were a contractual interest of the debtor, and ordered that they be turned over as property of the bankruptcy estate. The issue presented for appeal is whether the weekly payments were properly found not to be excludable under 11 U.S.C. § 541(c)(2). Rule 8013 of the Federal Rules of Bankruptcy Procedure governs the district court's authority to review the decision of the bankruptcy court.

When the district court reviews a bankruptcy court's decision on appeal, it must adopt the bankruptcy court's findings of fact unless they are clearly erroneous. *In re Ebbler Furniture and Appliances Inc.*, 804 F.2d 87, 89 (7th Cir.1986); *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985); *In re Evanston Motor Company, Inc.*, 735 F.2d 1029, 1031 (7th Cir.1984). With respect to interpretations of law, however, as in this case, the district court is not so restricted. *Id.;* Fed.R.Bankr.P. 8013. Bankruptcy court conclusions of law are subject to *de novo* review. *See, e.g., In re Daniel*, 771 F.2d 1352, 1353 (9th Cir.1985).

Having reviewed the record, the decision of the bankruptcy court, and the relevant law, this court affirms the bankruptcy order of February 10, 1988. The facts of the case are stipulated as follows.

### II.

Joseph and Kimberly Brown filed a voluntary petition in bankruptcy on July 17, 1986. Prior to that time, having won the Arizona lottery in 1985, the Brown's received an initial distribution of $39,500.00 and spent it prior to filing their bankruptcy petition. The balance of the lottery money was made payable to Joseph E. Brown as beneficial owner of John Hancock Mutual Life Insurance Company Annuity Number LA 000240, at $1,000.00 weekly for 948 weeks, from May 1, 1986 through and including June 24, 2004. Mr. Brown could not choose to receive his winnings in a full cash payment, and had no right to negotiate the terms of the annuity contract. His wife, Kimberly, is the named beneficiary of the annuity.

The Brown's bankruptcy schedules show no priority claims, $19,116.07 in secured claims, and $62,388.49 in unsecured claims. All other property has been exempted or is abandonable by the trustee due to outstanding liens.

The annuity purchased by the Lottery Commission contains the following required nonalienation notice:

"The beneficiary or any alternate beneficiary designated by the owners shall have no right, power, authority or privilege to use, sell, transfer, assign, pledge, hypothecate, mortgage, encumber, nor in any manner dispose of, any of the income or principal of the annuity or other financial alternative until such income and principal shall have been actually received. The income and principal of the annuity or other financial alternatives shall not be subject to attachment, garnishment, execution, supplemental proceedings on judgment, or any other form or manner of legal process for the collection or enforcement of any debtor liability until such income or principal, as the case may be, shall actually be paid to, received by, and under the control of the beneficiary or any alternative beneficiary designated by the owner."

Essentially the debtors argue that the annuity contract's restriction on transfer qualifies the proceeds as excludable from the bankruptcy estate pursuant to 11 U.S. C. § 541(c)(2). The trustee argues that the debtor's interest in the annuity contract and the right to receive weekly payments is property of the estate as defined in 11 U.S.C. § 541(c)(1).

### III.

Eleven U.S.C. § 541 is a broadly inclusive statute defining property of a bankruptcy estate. The scope of § 541(a) is particularly "broad and all embracing." *In re Miller*, 16 B.R. 790, 791 (Bkrtcy.D. Md.1982). But for a specific, narrowly construed exception set forth in § 541(c)(2), an interest of a debtor will become property of the bankruptcy estate despite any agreement to the contrary which attempts to restrict transfer. 11 U.S.C. § 541(c)(1)(A).

Under subsection (2), however, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). The law is clear that this provision was intended by Congress to specifically preserve "restrictions on transfer of a spendthrift trust." *In re Miller* at 791, quoting H.Rep. No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 83 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5869, 6325. See also Ind. Code 30–4–3–2; *Matter of Cook*, 43 B.R. 996 (N.D.Ind. 1984).

As a general rule, a beneficiary's interest in a spendthrift trust is excluded from his bankruptcy estate if state law and the trust so provide. Bankr. Code, 11 U.S.C.A. § 541(c)(2); *Matter of Moody*, 837 F.2d 719 (5th Cir.1988); *Matter of Goff*, 706 F.2d 574, 580 (5th Cir.1983). The Indiana Code and Indiana cases recognize and clearly define a spendthrift trust and its requirements.

Pursuant to Ind. Code 30–4–3–2, a settlor may provide in the terms of a trust that the beneficiary's interest may neither voluntarily nor involuntarily be transferred before payment or delivery of the interest to the beneficiary. If the settlor is also a beneficiary of the trust, such a provision will not prevent creditors from satisfying claims from the beneficiary's interest in the trust estate. Ind. Code 30–4–3–2(a)-(b). To qualify as a spendthrift trust, it must be shown that the settlor is not a beneficiary of the plan, that the plan contains an anti-alienation clause, and that debtor beneficiary has no present dominion or control over the plan corpus. *Matter of McVade*, 72 B.R. 560, 562 (Bkrtcy.N.D.Ind.1987); *Matter of Cook*, 43 B.R. 996, 1001 (N.D.Ind. 1984); *Matter of Jones*, 43 B.R. 1002, 1006 (N.D. Ind. 1984).

*Cook, Jones* and *McVade* all involve the issue of whether an ERISA-qualified retirement plan meets the requirements of a spendthrift trust. It is evident from these and other similar cases, that retirement plans will be examined by the courts on a

case by case basis. Some will be seen as spendthrift trusts and others will not, with the key element being that of the beneficiary's access to the funds. A recent amendment to § 30–4–3–2 provides some support for the position that a retirement plan meeting specific requirements might in some limited circumstances qualify as a spendthrift trust. See, Ind. Code 30–4–3–2(c). Again, the key factor appears to be the accessibility of the funds.

In a bankruptcy context, courts have been highly reluctant to find that a plan will shield a fund from the reach of bankruptcy creditors. If the function of a plan diverges in any way from that of a spendthrift trust, despite a superficial fulfillment of requirements, the plan will be viewed as property of the bankruptcy estate. In *Cook* and *McVade*, although the plans contained an anti-alienation clause, and the settlor was not the beneficiary, funds were turned over to the trustee due to a right of withdrawal. In general, the plans were seen to function more like savings plans than spendthrift trusts.

The annuity contract in this case is distinct in several ways from the retirement plans above, and these distinctions even more clearly disqualify the debtors' position. The above plans involved at least partial contributions from employee wages. By contrast, the Brown's annuity payments are a windfall, in fact resulting from an activity that, while legal in Arizona, is illegal in Indiana. See, Ind. Const. Art. 15, § 8. See also, *Kaszuba v. Zientara*, 506 N.E.2d 1 (Ind.1987); Ind. Code § 35–45–5–2.

Several interesting principles were established in *Kaszuba*. The Supreme Court of Indiana acknowledged that residents of Indiana cannot be restrained from participating in lotteries that are legal in a sister state. The court also found that where Indiana residents enter into a contract in Indiana that is related to such a legal lottery, the agreement between them can be seen as legal and enforceable in Indiana courts.

The annuity agreement in this case is a contract between an Indiana resident and the Arizona Lottery Commission. Its purpose is to specify a method of payment for Arizona lottery winnings. In a sense, the agreement is the remaining portion of the prize itself. As such, its enforcement might well be shunned by Indiana courts, unlike the agreement in *Kaszuba*. Enforcement is, however, not the issue here. In fact, there is no element of contingency involved with respect to the debtors' receipt of at least $4,000.00 per month of unearned monies. (For a discussion of contingency, see *In the Matter of Xonics Photochemical, Inc.*, 841 F.2d 198 (7th Cir. 1988)). The debtors' weekly payments are here assured by a contractual agreement that is presumed to be legally enforceable, at least in Arizona. For purposes of the underlying bankruptcy, as correctly determined by the bankruptcy court, the agreement represents a contractual interest of the debtor, rightfully considered part of the bankruptcy estate.

The debtors' position, particularly in the state of Indiana, boggles the mind from a policy perspective, and certainly offends the spirit of bankruptcy law. These debtors would wish to enjoy their windfall uninhibited by previously established debts. The Brown's tend not, as millionaires, to evoke an image of being trapped in a pit of debt, in need of a fresh start. With the monthly income that they can rely on enjoying for the next decade and beyond, free of the usual consumption of energy and investiture of time, it is understandable that the trustee has asserted that "[i]t would be inequitable to allow a millionaire to discharge $80,000.00 of debt." The weekly annuity payments should be, and are as a matter of law and policy, included in the bankruptcy estate. See, *In re Koonce*, 54 B.R. 643 (Bkrtcy.D.S.C.1985) and *In re Miller*, 16 B.R. 790 (Bkrtcy.D.Md.1982), both finding lottery winnings not to qualify as excludable from the bankruptcy estate.

■ As a final matter, the debtors' assertion that the annuity contract is excludable by way of Ind. Code 27–2–5–1, which provides that benefits from a life annuity contract will be inalienable if so specified in

an annuity contract, is without merit. A spendthrift provision enforceable in bankruptcy court must be contained in a trust. The agreement here is a contract. An approach similar to that of the debtors was specifically rejected in *In re Power*, 115 F.2d 69 (7th Cir.1940). See also, *Miller* at 791. The court's comments in *Miller* apply and bear repeating here:

It is beyond question that the Debtor's interest, albeit in some respects a future interest, in the lottery winnings became property of the estate upon the filing of his petition for relief under Chapter 7 of the Bankruptcy Code. The scope of § 541(a) is broad and all embracing. *In re Ford*, 3 B.R. 559, 568–70 (Bkrtcy., D.Md. 1980), *aff'd per curiam sub nom Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981). *Cf. In re Ryan*, 15 B.R. 514 Bankr.L.Rep. (CCH) ¶ 68,466 (Bkrtcy., D.Md.1981). The Court is unconvinced that lottery winnings payable pursuant to an annuity contract are subject to a "restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of the § 541(c)(2) limitation of the scope of § 541(a). Congress intended § 541(c)(2) to preserve "restrictions on transfer of a spendthrift trust." H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep.No. 95–989, 95th Cong., 2nd Sess. 83 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Thus, the Debtor's interest in the lottery winnings are property of the estate subject to any valid exemption.

It is unthinkable that the Arizona Lottery Commission would have intended, in setting up this method of payment, to aid these Indiana debtors in avoiding creditors' claims in bankruptcy. More likely the plan was seen as having certain tax advantages for all concerned, and as allowing the bulk of the money to remain with the state of Arizona for whatever purposes allowed under Arizona law. As an incidental advantage, the plan does protect these debtors from a short-lived misuse of their windfall.

The holding of this court in no way attempts to interpret the implications of this arrangement in terms of Arizona law, nor does this decision infringe in any way on the nonalienation provision, which disallows alienation only until the payments are received by the Brown's here in Indiana. It is not unheard of, even in the context of a valid spendthrift trust, not here found under Indiana law, that an arrangement be made to turn over money to a third party as it is received by a beneficiary. See, 83 A.L.R.3d 1142.

This arrangement in the state of Arizona was born of fiscal concerns quite apart from those asserted here by the Brown's. Those concerns were in no way intended to permit these instant millionaires from paying their legitimate debts. Nothing in the law of Indiana excuses the payment of these debts. Given all the liberal intendments of the Bankruptcy Act, the same does not remotely authorize this scheme. These debtors will not be permitted to avoid their obligations by using this Arizona state-created device. The message to the Brown's is clear: You won big in the Arizona lottery. You lose here!

In light of the above, the decision of the bankruptcy court is AFFIRMED. The case is REMANDED to bankruptcy court for further proceedings consistent with this opinion. IT IS SO ORDERED.