In re Michael J. WALRO, Appellant,

v.

Jonathon D. STRIEGEL, Appellee.

In re Jonathon D. STRIEGEL, Debtor.

No. NA 90–110–C.
Bankruptcy No. 90–90049–MHK–7.

United States District Court,
S.D. Indiana,
New Albany Division.

Aug. 5, 1991.

Michael J. Walro, pro se.

Steven S. Lohmeyer, New Albany, Ind., for appellee, debtor.

## AMENDED MEMORANDUM ENTRY

NOLAND, District Judge.

### I. *Background*

This cause is before the Court on appeal of Bankruptcy Judge Utschig's decision that (1) the payments from a structured settlement agreement which the debtor has been receiving are not part of the bank-ruptcy estate, and (2) even if the payments are included in the estate, that they are exempt under Indiana Code 27–2–5–1 and 11 U.S.C. § 522(b)(2). On July 9, 1991, the Court reversed the Bankruptcy Court's decision, and remanded this cause for further proceedings. The trustee has since filed a Motion for Clarification of Judgment and Memorandum in Support thereof.

On January 11, 1984, Jonathon D. Striegel (hereinafter "the debtor"), was "disfigured and disabled" as a result of a gunshot wound to the head. He lost an eye and a portion of his skull. In the summer of 1985, the debtor filed and settled a lawsuit in the Floyd County (Indiana) Circuit Court (Cause Number C85–C–146) against three (3) defendants. The debtor received an initial lump sum of $125,000.00. Additionally, the parties' settlement agreement provided that the state court defendants' insurer would pay the debtor $1,114.00 per month for life and periodic payments as follows:

| Amount of Payment | Date of Payment |
| --- | --- |
| $ 10,000.00 | September 15, 1990 |
| $ 15,000.00 | September 15, 1995 |
| $ 25,000.00 | September 15, 2000 |
| $ 50,000.00 | September 15, 2005 |
| $ 75,000.00 | September 15, 2010 |
| $100,000.00 | September 15, 2015 |

Settlement Agreement, pp. 2–3, ¶ IV(B)(1,2). In order to fulfill its responsibility to make the above payments, Meridian Mutual funded an annuity policy with Transamerica Occidental Life Insurance Company. The settlement agreement did not indicate what portion of the initial lump sum or subsequent payments represented lost past or future wages, medical expenses, or damages for pain and suffering.

The settlement agreement also provided that the insurance company's duty to make such periodic payments is an obligation which is both unfunded and unsecured, that the debtor has no rights in the annuity contract, and that the periodic payments are not subject to anticipation, alienation, sale, transfer, assignment, pledge or encumbrance by the debtor. Settlement Agreement, pp. 3–4, ¶¶ V, VI.

On January 19, 1990, the debtor filed his Voluntary Petition for bankruptcy. On his schedule of current income and current ex-

penditures the debtor listed the structured settlement arising out of his personal injury case noting that it produced monthly income of $1,114.52. On March 29, 1990, the debtor filed his Amended Schedules B–2 and B–4. The debtor's Amended Schedule B–2 listed "anticipation of personal injury settlement, Floyd Circuit Court" and indicated that the value thereof was "contingent." In his Amended Schedule B–4, the debtor claimed that the structured settlement was exempt pursuant to I.C. § 27–2–5–1. The trustee subsequently filed his Motion for Turnover Order and his Objection to the Debtor's Amended Exemption on April 4, 1990. The Motion for Turnover Order sought the turnover of the $10,000 payment which was to be paid to the debtor out of the annuity on September 15, 1990. The trustee's Objection to the Debtor's Amended Exemption stated, without elaboration, that the exemption did not "meet the parameters" of the Indiana statute (I.C. § 27–2–5–1).

On August 8, 1990, Judge Utschig held a hearing on the trustee's Motion for Turnover Order and the trustee's Objection to the Debtor's Amended Exemption. Judge Utschig orally ruled that the stream of future payments would not be property of the estate, and that even if it were it would be exempt. In denying the trustee's Motion and overruling his Objection, Judge Utschig reasoned as follows:

> 11 [U.S.C. §] 541 provides that, quote: "All legal or equitable interests of the debtor in property as of the commencement of the case,"

unquote, is property of the [estate]. In the present case the debtor does not have a legal or equitable interest in the annuity. The insurance company owns the annuity under the terms of the settlement agreement. In this case the debtor has none of the traditional indices of ownership. The debtor did not produce the annuity. The debtor does not control the stream of payments. The debtor has no power to designate or change beneficiaries. The debtor cannot use the stream of payments as collateral. The debtor only becomes entitled to each payment as it is received. On January 19th,

1990 the estate became heir to the interest of the debtor. On this date the debtor received no payments from the insurance company. Accordingly, the Court finds that the stream of payments is not property of the estate, as to hold otherwise would destroy the debtor's fresh start by bringing payments which are akin to future earnings into the property of the estate. Further the court would find that even if an annuity—or this annuity were property of the estate, it would clearly be exempt under Indiana Code 27–2–5–1 and 11 [U.S.C. §] 522(b)(2).

Transcript of Hearing of Trustee's Motion and Objection, 4–5. The Bankruptcy Court's oral ruling was memorialized in a one (1) page Order which stated, in summary form, the rationale underlying the Court's decision. The Order stated, *inter alia,* that "[t]he schedule of periodic payments the debtor will receive is in the nature of future income." Order of August 23, 1990, p. 1.

On August 23, 1990, the trustee filed a Motion for Stay of Order Pending Appeal. The trustee argued that the trust estate would be irreparably damaged if the debtor received and spent his September 1990 lump sum payment. On September 18, 1990, Judge Utschig granted in part the trustee's Motion for Stay. He ordered the insurance company to deposit the September 1990 lump sum payment ($10,000) into the debtor's counsel's escrow account, and for the debtor's counsel to immediately withdraw $4,000 of the payment and distribute the same to the debtor. This appeal, which was perfected in a timely manner, is fully briefed.

## II. *Discussion*

### A. Jurisdiction and Standard of Review

The parties agree that there are two (2) issues presented for review in this case. First, the Court must determine whether the schedule of future periodic payments the debtor is to receive as a result of the structured settlement in his personal injury action is an asset of the bankruptcy estate under 11 U.S.C. § 541. Second, the Court must determine whether, assuming that

the schedule of future periodic payments is an asset of the estate, the asset is exempt under Indiana law and 11 U.S.C. § 522.

This Court has jurisdiction over the present appeal pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(a). The standard of review which this Court must apply in reviewing a decision of the bankruptcy court is well established:

> In an appeal from a bankruptcy court's decision, a district court applies two standards of review: one for findings of fact; the other for conclusions of law. *Matter of Busick*, 65 B.R. 630, 632 (N.D.Ind. 1986). When the appellant alleges errors of fact, Rule 8013 [of the Federal Rules of Bankruptcy Procedure] dictates that "findings of fact shall not be set aside [by the district court] unless clearly erroneous." *See also In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985). A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 [105 S.Ct. 1504, 1511, 84 L.Ed.2d 518] (1985).
>
> The relevant standard of review for conclusions of law also is governed by Rule 8013, which provides the district court with the discretion to "affirm, modify, or reverse" the bankruptcy court's legal conclusions. *See also Matter of Evanston Motor Co.*, 735 F.2d 1029, 1031 (7th Cir.1984). When a bankruptcy judge's conclusions are challenged, the district court must make a de novo review and may overturn the findings if they are contrary to law. *Busick*, 65 B.R. at 632.

*Morter v. Farm Credit Services*, 110 B.R. 390, 392 (N.D.Ind.1990), *rev'd on other grounds*, 937 F.2d 354 (7th Cir.1991).

**B. Whether the payments are included in the bankruptcy estate**

11 U.S.C. § 541(a)(1) provides that a bankruptcy estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case." In *In re Leck*, 113 B.R. 500, 501 (Bankr. W.D.Wisc.1990), it was noted that "[t]he scope of section 541 is broad, and includes causes of action." *Id. (quoting Sierra Switchboard Co. v. Westinghouse Electric Corp.*, 789 F.2d 705, 707 (9th Cir.1986) (*citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 9, 103 S.Ct. 2309, 2313 & n. 9, 76 L.Ed.2d 515 (1983))). In *Leck*, the Court observed that the treatment of exempt property has changed since the passage of the Bankruptcy Reform Act. While exempt property was not included in the bankruptcy estate under the old Act, it is included under the Reform Act. *Id.*

This Court must first determine whether the periodic annuity payments in the present case must be excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). Section 541(c)(2), which is an exception to the broad language of § 541(a)(1), *Matter of Perkins*, 902 F.2d 1254, 1256, n. 1 (7th Cir.1990), applies to spendthrift trusts. It provides as follows:

> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title [ (i.e., the restriction will prevent the beneficial interest from being subject to the claims of the debtor's creditors should he file for bankruptcy) ].

11 U.S.C. § 541(c)(2). In *Morter v. Farm Credit Services*, 937 F.2d 354, 357–58, which was decided after the Court's original Memorandum Entry was issued in the present case, the Seventh Circuit Court of Appeals held that the district court had erred in concluding that the statute should be construed conservatively as applying only to "traditional" spendthrift trusts. While the Seventh Circuit emphasized that the major inquiry in determining whether annuity payments fall within the bankruptcy estate is whether accumulated funds are beyond the reach of the beneficiary and his creditors, the Court left intact the requirement that a purported trust not be self-settled. The *Morter* Court repeatedly emphasized the fact that the

annuity which was at issue in that case was *not* self-settled. *Id.*

In order to determine whether the periodic annuity payments in the present case should be excluded from the bankruptcy estate, the Court must decide whether the annuity contract (which is described in the parties' settlement agreement) qualifies as a spendthrift trust under Indiana law. *Morter, supra; Brown v. Boyn,* 86 B.R. 944, 946 (N.D.Ind.1988). This requires the satisfaction of three (3) distinct elements:

> [I]t must be shown that the settlor is not a beneficiary of the plan, that the plan contains an anti-alienation clause, and that the debtor-beneficiary has no present dominion or control over the plan corpus. *Matter of McVade,* 72 B.R. 560, 562 (N.D.Ind.1987); *Matter of Cook,* 43 B.R. 996, 1001 (N.D.Ind.1984); *Matter of Jones,* 43 B.R. 1002, 1006 (N.D.Ind.1984).

*Brown v. Boyn,* 86 B.R. at 946.

While the annuity contract in the present case apparently fulfills two (2) of the above requirements (it contains a fairly standard anti-alienation clause, and the debtor does not have "present dominion or control over the plan corpus"), it nevertheless fails to meet the definition of a spendthrift trust. This is so both because there does not appear to be sufficient evidence of the requisite intent to create a trust, and because the annuity contract fails to satisfy the requirement that the debtor-beneficiary must not have been a settlor of the purported trust. *In Re Riley,* 91 B.R. 389, 390–391 (Bankr.E.D.Va.1988). With regard to the intent element, what was said in *Riley* applies with equal force here. The courts will not simply assume that an annuity is a trust in the absence of evidence that the parties had the specific intent to

create a trust (i.e., unless, for example, someone is given the duties or powers of a trustee). *Id.,* 91 B.R. at 390–391.[1] The *Riley* Court drew a distinction between a traditional trust and an annuity where "the periodic payments made by the instrument ... more closely resemble those made under a contract." *Id. (citing Hughes v. Sun Life Assurance Co.,* 159 F.2d 110, 113 (7th Cir.1946)).

The requirement that a trust not be self-settled (i.e., that the debtor-beneficiary not be a settlor of the purported trust) provides yet another reason for finding that the periodic payments should not be excluded from the bankruptcy estate. This Court finds itself in agreement with the *Riley* Court's conclusion that a debtor's discretion in choosing to receive payments through an annuity as a means of settling a lawsuit "suggests that [the debtor] could be viewed as the settlor of any purported trust." *In re Riley,* 91 B.R. at 391, n. 1. Logic dictates that the debtor-beneficiary in the present case must be viewed as a settlor of the purported trust. Thus, the present annuity, like the annuity which was at issue in *Brown v. Boyn,* 86 B.R. at 946, does not constitute a spendthrift trust under Indiana law.[2] The periodic payments are therefore not excludable from the bankruptcy estate. This Court agrees with the conclusion of the Fourth Circuit Court of Appeals in *Tignor v. Parkinson,* 729 F.2d 977, 981 (4th Cir.1984), that a debtor's claims for injuries to the person, whether unliquidated or settled, are the property of the bankruptcy estate. While the *Tignor* Court's analysis involved the interpretation of Virginia law, a careful reading of its Opinion indicates that this conclusion was based upon the scope of bankruptcy

---

1. The *Riley* Court also noted that the annuity there under consideration did not constitute a trust because no identifiable *res* existed. *Id.,* 91 B.R. at 391. Citing *Chatham County Hospital Authority v. John Hancock Mutual Life Insurance Co.,* 325 F.Supp. 614, 619 (S.D.Ga.1971), the *Riley* Court noted that "[a]nnuity agreements create only the relationship of debtor and creditor, not a trust." The *Riley* Court correctly characterized the debtor's interest as a chose in action. *Id.*

2. Indiana Code 30–4–3–2(c) does not compel a different conclusion. While it "creates an exception to the traditional rule against self-settled or beneficiary created trusts", *In re Tomer,* 117 B.R. 391, 394 (Bankr.S.D.Ill.1990), the exception is limited to *pension plans* which are alleged to constitute spendthrift trusts. By its terms, the statute requires that (1) the purported trust be a "qualified trust under 26 U.S.C. [§] 401(a)", and (2) "[t]he limitations on each beneficiary's control over the beneficiary's interest in the trust comply with 29 U.S.C. [§] 1056(d)."

estates after the passage of the Reform Act rather than a state statute. *Id.,* 729 F.2d at 980.

### C. Whether the payments fall within an exemption

▆▆ Inasmuch as the periodic payments are an asset of the estate, this Court must determine whether, as urged by the debtor, they are exempt because they fall within the terms of I.C. § 27–2–5–1.[3] The Court looks to Indiana law in determining whether the periodic payments are exempt because the State of Indiana has "opted out" of the federal exemption scheme. *See In re Ondras,* 846 F.2d 33, 35 (7th Cir.1988) (*citing* 11 U.S.C. § 522, and I.C. § 34–2–28– 0.5). I.C. § 27–2–5–1 provides as follows:

**27–2–5–1. Alienation by beneficiary prohibited—Exemption from levy.**—No person entitled to receive benefits under a life annuity contract, or under a written agreement supplemental thereto, issued by a domestic life insurance company, shall be permitted to commute, anticipate, encumber, alienate, or assign such benefits, if the right to do so is expressly prohibited or withheld by a provision contained in such contract or supplemental agreement. And, if such contract, policy or supplemental agreement so provides, such benefits, *except when payable to the person who provided the consideration for such contract,* shall not be subject to such persons' debts, contracts, or engagements, nor to any judicial process to levy upon or attach the same for payment thereof.

(Emphasis added). Inasmuch as the debtor in the present case provided the consideration for the settlement agreement which led ultimately to the execution of the annuity contract, the Court concludes that the periodic payments are not exempt under the statute.

This Court rejects the debtor's argument that "unless his eye was the consideration", he did not supply consideration in the present case. Brief of Appellee, pp. 11–13. This argument, which depends upon the notion that the debtor did not supply consideration because he did not actually *pay* for any part of the annuity, ignores the fact that consideration sufficient to support the formation of a contract need not be monetary. E. Allen Farnsworth, *Contracts,* §§ 2.3, 2.12, at p. 42–44, 69 (1982) (discussing non-monetary forms of consideration, and noting "there is clearly consideration for [a] promise" where the promisor bargains for the settlement of a valid claim in exchange for a promise to pay a sum of money in the future). Indeed, as the trustee points out in his Brief of Appellant and his Reply Brief, the debtor's promise to release the alleged joint tortfeasors (the state court defendants) in exchange for the lump sum payment and the periodic payments referred to above,[4] is a classic example of a bilateral contract where the consideration given is in the form of a promise for a promise or a promise to forbear from taking some action. *Id.*

▆▆ The Court does not find persuasive the debtor's argument that the periodic annuity payments should be exempt because his right to receive them is merely a contingent future interest. *See In re Ryerson,* 739 F.2d 1423, 1425 (9th Cir.1984) ("By including all legal interests without exception, Congress indicated its intention to in-

---

**3.** The Court does not reach the question of whether, in a different case, periodic annuity payments would be exempt under I.C. § 34–2– 28–1(a)(3). In the present case the debtor's Petition was filed on January 19, 1990, nearly two (2) months prior to the effective date of subsection (a)(3) (i.e., March 15, 1990). This statute does not apply in this case because, as the Court explained in *In re Pederson,* 105 B.R. 622, 624 (Bankr.D.Col.1989), "[e]xemption rights in bankruptcy are determined as of the time of the bankruptcy filing."

**4.** The parties' Settlement Agreement specifically provided as follows:

II. <u>RELEASE</u>

In consideration of the lump sum payment referred to in Paragraph IV.A and the promise to make the periodic payments referred to in Paragraph IV.B, Plaintiff hereby releases and forever discharges Defendant and Insurance Company from any and all past, present or future claims for damages for personal injuries which Plaintiff has or claims to have, for or in any manner arising out of the Occurrence.

Settlement Agreement, pp. 1–2 (attached as Exhibit to Brief of Appellee, pp. 15–16).

clude all legally recognizable interests although they may be contingent and not subject to possession until some future time."). As the trustee aptly observed in his Brief, "[t]he debtor at the time he filed bankruptcy had a present right to receive future payments[.]" Brief of Appellant, p. 5.

While the Court finds that the Bankruptcy Judge's conclusions of law are contrary to law, there remains a significant but unanswered question. Inasmuch as the parties' Settlement Agreement does not indicate what portion of the total amount to be paid to the debtor constitutes past wages, future wages, damages for pain and suffering, and so on, *see, In re Davis*, 105 B.R. 288, 291 (Bankr.W.D.Pa.1989), *aff'd*, 118 B.R. 272 (W.D.Pa.1990), this Court is without sufficient information to enter an appropriate order indicating what portion (if any) of the periodic payments is available to satisfy the claims of the debtor's creditors.[5]

After the original Memorandum Entry was issued in this cause, the trustee filed a Motion for Clarification of Judgment and Memorandum in Support thereof. In his Memorandum, the trustee discusses the facts and holding of the *In re Davis* case and states that he is unable to prepare for the hearing on remand because he does not know what issue remains to be litigated. Significantly, the trustee's Memorandum presents argument which would appropriately be addressed to the bankruptcy court on remand (i.e., that the debtor should be judicially estopped from claiming as exempt payments which he listed as tort claims to avoid the payment of applicable taxes). The Court's Entry does not foreclose the trustee from pursuing this or any other relevant argument on remand, nor does it require the parties to present evidence on remand with respect to what portion of the stream of future payments represents past or future wages, or damages for pain and suffering (such evidence may not exist). The Court simply notes that

there remains the question of what portion of the stream of future payments is available to satisfy the claims of the debtor's creditors. The Bankruptcy Court must make this determination.

### III. *Conclusion*

For the foregoing reasons, the Court concludes that the decision of the Bankruptcy Court denying the trustee's Motion for Turnover Order and granting the debtor's exemption must be REVERSED and REMANDED for further proceedings consistent with this Amended Memorandum Entry.

IT IS SO ORDERED.

---

**5.** The parties' Settlement Agreement states only that the payments "constitute damages on account of personal injuries or sickness, arising from the Occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code, as amended." Settlement Agreement, p. 3, ¶ IV(C).