In re Victor J. ZIEGLER d/b/a
Zig–Zag Bar, Debtor.

Richard W. ROEDER, Trustee, Movant,

v.

Victor J. ZIEGLER d/b/a Zig–
Zag Bar, Respondent.

Richard W. ROEDER, Trustee, Plaintiff,

v.

Victor J. ZIEGLER d/B/a Zig–
Zag Bar, Defendant.

Bankruptcy No. 92–00203.
Motion Nos. 92–RR–2 to 92–RR–4.
Adv. No. 92–1730.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 7, 1993.

**152**

Richard W. Roeder, pro se.

Tamara Ochs Rothschild, Titusville, PA, for trustee.

Gary H. Simone, Butler, PA, for debtor.

## OPINION[1]

WARREN W. BENTZ, Bankruptcy Judge.

### Background

Victor J. Ziegler doing business as Zig–Zag Bar ("Debtor") filed a voluntary Peti-tion under Chapter 7 ("Petition") of the Bankruptcy Code on March 6, 1992 ("Filing Date"). At the first meeting of the credi-tors, pursuant to 11 U.S.C. § 341, which was held on July 2, 1992, Richard W. Roe-der, Esq. ("Trustee") became aware of a settlement which the Debtor had received as the result of a personal injury accident. In January, 1992, the Debtor received an initial cash payment of $35,000 from which Ralph Montana ("Montana"), Debtor's per-sonal injury attorney, retained $8,000 in fees and remitted $27,000 to the Debtor. In addition to the cash payment, the Debtor received an annuity contract which will pro-vide the Debtor $300 per month for 20 years beginning on February 1, 1993 ("An-nuity Contract").

On July 22, 1992, the Debtor amended Schedule B and Schedule C of the Petition to list the Annuity Contract as personal property and claim it as exempt under 11 U.S.C. § 522(d)(11)(D) and (E). The Debtor further asserts that the Annuity Contract is a spendthrift trust and is not property of the estate.

The Trustee asserts that the Annuity Contract is property of the estate under 11 U.S.C. § 544 and not exempted therefrom as a spendthrift trust; that the Debtor has already received an amount in excess of the $7,500 exemption on account of personal bodily injury as provided by 11 U.S.C. § 522(d)(10)(D); and that the Debtor is presently employed and the proceeds of the Annuity Contract are not reasonably neces-sary for support as provided by 11 U.S.C. § 522(d)(11)(E).

We commenced an evidentiary hearing on the Trustee's objections on October 1, 1992. As part of the Debtor's testimony, it became known that the Debtor has an in-terest in a retirement plan from his employ-ment as a school teacher administered through Public School Employee's Retire-ment System (the "Retirement Plan") and a possible interest in a Lincoln Towncar ("Lincoln").

At the close of the evidence on October 1, 1992, the Debtor was ordered to file

1. This Opinion constitutes our findings of fact and conclusions of law.

further amended schedules to include the Retirement Plan and the Lincoln.

On October 13, 1992, the Debtor filed amendments to schedules B and C which included the Retirement Plan and claimed it as exempt under 11 U.S.C. § 522(d)(10)(E).

The Debtor's October 13, 1992 amendments were followed by the Trustee's Motion to compel compliance with our Order of October 1, 1992. The Debtor then filed further amended schedules which listed the Lincoln as personal property and also disavowed any interest in the vehicle.

On December 15, 1992, the Trustee filed an objection to Debtor's exemption of the Retirement Plan under 11 U.S.C. § 522(d)(10)(E). The Trustee asserts that the "Debtor is presently working, able to continue working and earn a reasonable salary from which he is able and will be able to cover all of his basic expenses."

Also before the Court is the Trustee's Complaint to deny the Debtor's discharge pursuant to 11 U.S.C. § 727(c)(1) or to revoke the discharge pursuant to § 727(d)(1). In addition to the Annuity Contract, the Retirement Plan, and the Lincoln, the Trustee asserts that the Debtor has concealed a bank account ("Bank Account") which the Debtor opened prepetition and that the Debtor has knowingly and fraudulently made false oaths.

The Debtor responds that there was no intentional concealment; that there were no false oaths; that the Lincoln is not property of the estate; that the failure to list the Annuity Contract and the Bank Account were merely oversights; and that the Retirement Plan was disclosed by the attachment of the Debtor's paystubs to the Petition which reflect a payroll deduction for the Retirement Plan.

A further evidentiary hearing was held on April 21, 1993. The matters were taken under advisement. We now render our decision.

## Issues

1. Whether the Debtor may exempt his interest in the Retirement Plan under 11 U.S.C. § 522(d)(10)(E).

2. Whether the Debtor may exempt any portion of the proceeds of the Annuity Contract under 11 U.S.C. § 522(d)(11)(D) or § 522(d)(11)(E).

3. Whether the Debtor's conduct warrants denial of his discharge under 11 U.S.C. § 727.

### 1. Retirement Plan

During his 23 year teaching career, the Debtor participated in a retirement plan, the terms of which are presented in the Public School Employees' Retirement Code, 24 Pa.C.S.A. §§ 8101–8534. The Debtor's access to the Retirement Plan is limited to the time of termination, retirement, disability or death.

In the Fall of 1991, the Debtor's employer, The North Clarion County School District ("School District") announced its intent to dismiss the Debtor for alleged immorality on the grounds that Debtor improperly administered certain tests in the Spring of 1991. The Debtor denied the charges. The Debtor was employed on the Filing Date and remained employed thereafter.

On January 25, 1993, the Debtor and the School District entered into a Settlement Agreement ("Agreement"). Pursuant to the terms of the Agreement, the Debtor was suspended without pay until June 4, 1993. The Debtor is to suffer no loss of benefits during the suspension except that Debtor must pay the cost of all insurances. The Debtor's Retirement Plan rights remain intact.

The Debtor suffers from a barrage of problems. In addition to alcohol addiction, the Debtor suffers other medical and psychological deficiencies. As a result of those health deficiencies, the Debtor, pursuant to the terms of his Retirement Plan, 24 Pa.C.S.A. § 8307(c), applied for and was granted a one year disability annuity. The Debtor is presently receiving a monthly disability payment in the amount of $1,198. Following a year of disability, the Debtor may elect to apply for continued disability, may terminate his teaching career and retire, or may return to work.

■ An agreement which restricts a debtor's use of funds and is enforceable outside of bankruptcy will be upheld by a court applying 11 U.S.C. § 541(c)(2), and those funds will neither become property of the estate nor available to his creditors. *In re Kelvington*, 146 B.R. 358 (Bankr. W.D.Pa.1992); *see also Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Velis v. Kardanis*, 949 F.2d 78 (3d Cir.1991).

■ The Debtor had no access to the Retirement Plan at the Filing Date and continues to have no access except for a temporary disability payment. He is still considered an employee. His employment has not terminated nor has he retired. Since there is no access to the Retirement Plan, it is not property of the Debtor's estate. Even if the temporary disability payments are property of the estate, such payments are exempt under 11 U.S.C. § 522(d)(10)(E). The present disability payments are the Debtor's only source of income (other than the Annuity Contract discussed infra) and are necessary to sustain the Debtor and provide only the basic necessities of life. *See In re Cauvel*, 146 B.R. 166 (Bankr.W.D.Pa.1992); *In re Comp*, 134 B.R. 544 (Bankr.M.D.Pa.1991).

## 2. Annuity Contract

The Debtor suffered injury as a result of an accident on January 29, 1990. As compensation for his injuries, the Debtor received, on or about January 9, 1992, the cash sum of $35,000 and an Annuity Contract which provides for payments to the Debtor of $300 per month for twenty (20) years commencing on February 1, 1993.

■ Paragraph 5 of the Annuity Contract provides that the Debtor "has no right to accelerate, defer, increase or decrease or assign the amount of any payment to be made under the Settlement Agreement." The Debtor asserts that this language creates a spendthrift trust which prevents the Annuity Contract from becoming property of the bankruptcy estate. This argument has no merit. The Debtor in effect agreed to place his own assets in trust and is the settlor who created the Annuity Contract. A settlor cannot be the beneficiary of his own spendthrift trust. *In re Morris*, 144 B.R. 401 (Bkrtcy.C.D.Ill. 1992); *In re Cooper*, 135 B.R. 816 (Bankr. E.D.Tenn.1992).

11 U.S.C. § 522(d)(11)(D) provides for an exemption of "a payment, not to exceed $7,500, on account of personal bodily injury ..." The Trustee alleges that the Debtor's receipt of a cash payment in January, 1992 more than compensated the Debtor for this exemption.

■ The $35,000 cash payment ($27,000 plus $8,000 attorney's fees) which the Debtor received on account of his personal injury was received prior to the Filing Date. That money is not a part of the pool of assets which constitute property of the estate from which the Debtor is entitled to claim his exemptions. We find that the Debtor is entitled to an exemption to be paid from the Annuity Contract in the amount of $7,500 pursuant to 11 U.S.C. § 522(d)(11)(D).

■ The Debtor returned to work within a month following his personal injury accident. Debtor suffered no impairment in his earning ability as a result of the accident. The Annuity Contract does not represent "compensation of loss of future earnings" and therefore, the Debtor cannot claim as exempt the entire Annuity Contract pursuant to 11 U.S.C. § 522(d)(11)(E).

After the Debtor's $7,500 exemption, the remainder of the Annuity Contract is property of the estate subject to the Trustee's administration. Debtor states that Montana is entitled to 25% of the payments from the Annuity Contract. We leave it to the Trustee to investigate whether or not Montana has a claim against the Annuity Contract.

## 3. Denial of Discharge

The Trustee asserts that the Debtor knowingly and fraudulently made a false oath as to the existence of any bank accounts or cash to which he was entitled and that the Debtor concealed property of the estate from the Trustee and therefore, the

Debtor should be denied a discharge or have his discharge revoked.

The Trustee filed his Complaint after the expiration of the 60 day period provided by FRBP 4004(a) for the filing of a Complaint involving an objection to discharge. The Trustee asserts that the delay was caused by the Debtor's concealment and that the Complaint was brought within 60 days of discovery of the concealment and thus, the Complaint is timely. The Debtor denies the allegations.

The Debtor has not yet received his discharge. Therefore, we need not address that portion of the Trustee's Complaint which seeks revocation of discharge. Further, since we find that the Debtor is entitled to discharge, we need not address the timeliness of the Trustee's Complaint.

The Trustee bases his Complaint on four failures to disclose by the Debtor: 1) Annuity Contract, 2) Retirement Plan, 3) Lincoln, and 4) Bank Account.

■ The Lincoln was never property of the estate. At the first hearing on October 1, 1992, it appeared that the Debtor may have some equitable interest in the vehicle; that the title was merely held by a "straw man;" and that the Debtor had made certain payments on the vehicle. After the Debtor filed amended schedules to include the Lincoln and after hearing further testimony on April 21, 1993, it is clear that the Debtor did not own the car. The car's owner, Helen Dunkle, filed her own bankruptcy; the secured lender regained possession of the Lincoln and there was no equity in the car. Thus, we do not view the Debtor's failure to disclose the Lincoln as an omission.

■ By writing letters to various banks, the Trustee discovered that the Debtor opened an account at Integra Bank two days prior to the Filing Date and deposited $1,010.64 into the account. We find credible the Debtor's testimony that he met with his attorneys on March 2, 1992, that certain of the bankruptcy related documents were signed, that the Debtor told his attorneys he had no bank account, but needed one to pay his bills, and that he was told he could open an account, deposit his paycheck and pay his bills. At that point, the Debtor felt his bankruptcy had commenced. Thus, the Debtor logically believed that his deposit of March 4, 1992 of $1,010.64 which consisted of his paycheck and a small additional amount was not subject to disclosure. We find no knowing or fraudulent false oath or any concealment of property of the estate in regard to the Bank Account.

■ At the Filing Date, the Debtor was working at his teaching position and had no access to nor any right to receive any portion of the Retirement Plan. While the Retirement Plan was not listed on the bankruptcy schedules, the Debtor attached to his Petition, as proof of income, a copy of his paystub which shows a payroll deduction for the Retirement Plan. We do not believe that the attachment of a paystub to the schedules constitutes an adequate disclosure of the Debtor's interest in the Retirement Plan; however, such disclosure negates the Trustee's allegations of a knowing and fraudulent false oath or an intentional concealment of the asset.

■ The most troublesome aspects of the Complaint are the allegations with respect to the Annuity Contract. However, after hearing the testimony, given the Debtor's mental and physical state, we find that the Debtor did not consciously elect to leave the Annuity Contract off the schedules. We further place substantial blame on the Debtor's personal injury attorney for the failure to advise Debtor's bankruptcy counsel of both the January, 1992 payment and the Annuity Contract at the time of the initial meeting between the Debtor and both attorneys. The personal injury attorney was obviously aware of the Annuity Contract when he discussed bankruptcy with the Debtor and recommended bankruptcy counsel.

The Trustee questions also the Debtor's explanation of the use of $27,000 between January, 1992 and the Filing Date. Between January 9, 1992 and the Filing Date, the Debtor frivolously spent $27,000— drinking, gambling, trips to Atlantic City, lottery and paying off a few small debts. Although such expenditures might easily

be disbelieved without further documentation or substantiation, we credit as truthful the Debtor's testimony based on the uncontradicted evidence that the Debtor has subsequently spent time in both a hospital psychological ward and an alcohol rehabilitation program.

We find the Debtor's conduct in the preparation of his schedules to have been sloppy and careless, but not amounting to bad faith sufficient to warrant the denial of his discharge.

An appropriate Order will be entered.

### ORDER

This 7 day of July, 1993, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. The Complaint of Richard W. Roeder, Esq., Trustee, to deny or revoke Debtor's discharge is DISMISSED.

2. The objection of Richard W. Roeder, Esq., Trustee, to Amended Schedules B and C regarding Retirement Plan is OVERRULED. The Debtor's claimed exemption of his interest in the pension held through Public School Employees' Retirement System is ALLOWED.

3. The objection of Richard W. Roeder, Esq., Trustee. to Amended Schedules B and C regarding Annuity Contract is SUSTAINED in part and OVERRULED in part. The Debtor is allowed an exemption of the first $7,500 in payments from the structured settlement annuity contract (payments which the Debtor has received since January, 1993 reduce the $7,500 amount). The remaining value of the structured settlement is non-exempt property of the estate subject to administration by the Trustee.