In re Charles Robert SIMON and
Judith Ann Simon, Debtors.

Bankruptcy No. BK 93–50945.

United States Bankruptcy Court,
S.D. Illinois.

Aug. 15, 1994.

Barry R. Bruhn, Reed, Bruhn and Wangler, P.C., Belleville, IL, for debtors.

Steven N. Mottaz, Chapter 7 Trustee, Thomas, Mottaz, Eastman & Sherwood, Alton, IL.

### OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Debtor, Charles Simon, was injured on the job on February 28, 1984, while working for Missouri Pacific Railroad Company (hereafter "Missouri Pacific" or "railroad"). Subsequently, on January 6, 1987, Mr. Simon and Missouri Pacific entered into a Release and Settlement Agreement (hereafter "Agreement") pursuant to which the railroad agreed to pay Mr. Simon, or his estate upon his death, certain periodic payments,[1] as follows:

1. $1,320 per month commencing January 15, 1987, and continuing each month thereafter for a period of twenty years, or the remainder of Mr. Simon's life, whichever period is longer, with an increase each year at the compounded rate of two percent per annum;

2. $25,000 on December 15, 1991;

3. $25,000 on December 15, 1996;

4. $50,000 on December 15, 2006.

The Agreement expressly provides that the payments "constitute damages on account of personal injury or sickness ..." and that Mr. Simon "accepts such payments in full settlement of all injuries and damages arising out of the subject matter of this Agreement...."

Under the terms of the Agreement, the parties also agreed that Missouri Pacific would assign its obligation to make the periodic payments to Beneficial Insurance Group Holding Company (hereafter "Beneficial"), which would, in turn, purchase an annuity from Western National Life Insurance Company to fund the payments to Mr. Simon. The terms of the assignment are set forth in an Assignment Agreement (hereafter "Assignment") entered into by Missouri Pacific, Beneficial and Mr. Simon on January 6, 1987.

Certain terms of the Agreement and the Assignment are relevant to the issues before the Court. The Agreement provides that Beneficial is the sole owner and beneficiary of the annuity, and both the Agreement and the Assignment provide that Mr. Simon has no legal or equitable interest in the annuity. Additionally, the Agreement contains an anti-alienation provision which states that "[t]he amounts paid and to be paid to Simon are his sole and separate property and no other person has any right or interest therein. No amount payable under this Agreement shall be subject to anticipation or assignment by any payee thereof, nor to attachment, seizure or legal or equitable process by any creditor of any payee prior to its actual receipt by such payee, nor may any payee accelerate, defer, increase or decrease any payment."

On December 29, 1993, Mr. Simon and his wife filed a joint petition for relief under chapter 7 of the Bankruptcy Code, prompting the trustee to seek turnover of the monthly payments.[2] On their bankruptcy schedules, debtors' only reference to the payments appears as income of $1486 monthly on schedule I.[3] Debtors do not list the payments as personal property on schedule B. In fact, they expressly state on schedule B that they have no interests in annuities, ERISA plans, other liquidated debts owing debtors, trusts, or any other personal property of any kind. Debtors do not claim an

---

**1.** These periodic payments were in addition to a lump sum payment of $250,000, less certain adjustments, paid to Mr. Simon at the time of execution of the Release and Settlement Agreement.

**2.** The Court notes that the trustee's motion for turnover does not address the payments of $25,000 and $50,000 which Mr. Simon is to receive

on December 15, 1996, and December 15, 2006, respectively.

**3.** On their statement of financial affairs, debtors also indicate that they had income of slightly more than $17,000 in each of 1991, 1992 and 1993 stemming from the annuity.

exemption for the payments on schedule C. In response to the trustee's motion for turnover of the monthly payments, debtors contend that the payments are not subject to turnover because they are periodic, are necessary to meet debtors' basic living expenses, and are in the nature of income rather than a lump sum settlement.

Section 541 of the Bankruptcy Code defines the parameters of the bankruptcy estate. 11 U.S.C. section 541. With certain exceptions delineated in subsections (b), (c)(2) and (d), section 541 provides that the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. section 541(a)(1).

■ Here, debtors contend that the payments should be characterized as income. Presumably, by this they mean that Mr. Simon, on the petition date, had no legal or equitable interest in payments which were to be paid post-petition. However, debtors provide no evidence or authority to support this notion and it is contrary to the evidence contained in the record. The Agreement in settlement of Mr. Simon's claim against the railroad pre-dates the bankruptcy petition and it plainly states that the payments constitute damages for personal injury. Mr. Simon's right to receive payments pursuant to the Agreement is a contractual right which vested upon execution. The fact that Mr. Simon and the railroad agreed that a portion of the damages would be paid through periodic payments does not alter the nature of his interest as a "present right to receive future payments." *Walro v. Striegel*, 131 B.R. 697, 702–03 (S.D.Ind.1991). It is of no consequence that the Agreement and the Assignment provide that Mr. Simon has no legal or equitable interest in the annuity because the annuity is merely a mechanism for Beneficial, the owner and beneficiary of the annuity, to fund the payments which it is contractually bound to make to Mr. Simon. *See, e.g., In re Pizzi*, 153 B.R. 357, 360–61 (Bankr.S.D.Fla.1993).

■ Having determined that Mr. Simon had an interest in the payments as of the commencement of the bankruptcy case, the Court will turn next to the question of whether the payments are excluded from the estate under subsections 541(b), (c)(2) or (d). The Court notes that the debtors have not argued that the payments at issue fall within these exceptions, and even the most cursory review of subsections 541(b)[4] and (d)[5] reveals that they are inapplicable in this case. A more compelling argument for exclusion from the estate can be made under subsection 541(c)(2).[6] However, the debtor has present-

---

4. Subsection 541(b) states:

   (b) Property of the estate does not include—
     (1) any power that the debtor may exercise solely for the benefit of an entity other than the debtor;
     (2) any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case under this title, and ceases to include any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease during the case;
     (3) any eligibility of the debtor to participate in programs authorized under the Higher Education Act of 1965 ... or any accreditation status or State licensure of the debtor as an educational institution [sic] or
     (4) any interest of the debtor in liquid or gaseous hydrocarbons....

5. Subsection 541(d) states:

   (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

6. Subsection 541(c) states:

   (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
     (A) that restricts or conditions transfer of such interest by the debtor; or
     (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the

ed nothing to this Court to indicate that the payments are, in fact, benefits under an ERISA[7] qualified employee benefit plan, *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *In re Hall*, 151 B.R. 412, 417–421 (Bankr. W.D.Mich.1993) (defining "ERISA qualified" employee benefit plan), or a spendthrift trust which is enforceable under state law. *E.g., Morter v. Farm Credit Services*, 937 F.2d 354 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2991, 120 L.Ed.2d 868 (1992); *Matter of Perkins*, 902 F.2d 1254, 1256 n. 1 (7th Cir.1990); *Walro v. Striegel*, 131 B.R. at 700. There is nothing in the record, in the first instance, to suggest the existence of an employee benefit plan. And, notwithstanding the anti-alienation provisions in the Agreement, there is no evidence that the Agreement and Assignment were intended to establish a trust for Mr. Simon taking the form of the annuity.[8] "The courts will not simply assume that an annuity is a trust in the absence of evidence that the parties had the specific intent to create a trust...." *Walro v. Striegel*, 131 B.R. at 701.

Here, all indicia of trust are absent. The word trust never appears in the documents, and no one is given duties or powers common to trustees (including discretion to determine the amount or frequency of payments which provide for Mr. Simon's support and maintenance). There is no identifiable trust res since, by the terms of the originating documents, Beneficial is the owner and beneficiary of the annuity and Mr. Simon has neither a legal nor equitable interest in it. *See id.; In re Riley*, 91 B.R. 389, 390–91 (Bankr. E.D.Va.1988). Rather, Mr. Simon has a purely contractual interest in the periodic payments arising from the Agreement and the Assignment. *Walro v. Striegel*, 131 B.R. at 701 & n. 1; *In re Riley*, 91 B.R. at 391; *In re Johnson*, 108 B.R. 240, 242 (Bankr.D.N.D.

1989). "[T]he annuity payments ... are nothing more than interval payments made on an underlying debt, which represents payments on account of personal bodily injury." *In re Johnson*, 108 B.R. at 243.

■ Moreover, even if the Court assumes, *arguendo*, that a trust exists, such trust is self-settled and is, therefore, invalid as a spendthrift trust under Illinois law. *See, e.g., In re Morris*, 144 B.R. 401, 404 (Bankr. C.D.Ill.1992), *aff'd*, 151 B.R. 900 (C.D.Ill. 1993) (Illinois law does not permit one to create a spendthrift trust with his own property for his own benefit); *Matter of Perkins*, 902 F.2d at 1257 n. 2; *In re Silldorff*, 96 B.R. 859, 864 (C.D.Ill.1989). *See also In re Ziegler*, 156 B.R. 151, 154 (Bankr.W.D.Pa.1993) (debtor, in effect, placed his own assets in purported trust when he agreed to the creation of an annuity contract to fund a personal injury settlement, and a settlor may not be the beneficiary of his own spendthrift trust); *In re Jordan*, 914 F.2d 197, 198–200 (9th Cir.1990) (same); *Walro v. Striegel*, 131 B.R. at 701–02 (same); *In re Riley*, 91 B.R. at 391 n. 1 (same). Thus, in the absence of evidence excepting the payments from the estate under subsection 541(c)(2), the Court finds that Mr. Simon's interest in the payments is an asset of the estate.

Since the property in question belongs to the estate, the debtors' only recourse is to find an exemption statute under Illinois law to shelter the payments.[9] As noted earlier, debtors have not claimed the payments as exempt under any statutory provision. However, at the hearing of this matter, debtors seemed to argue that the payments are exempt because an annuity is funding the payments.

■ The Illinois legislature has seen fit to exempt certain personal property owned by

---

appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

(2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

**7.** ERISA is the acronym for the Employee Retirement Income Security Act of 1974.

**8.** On schedule B, debtors expressly state that they have no interests in ERISA plans or in trusts.

**9.** Illinois has opted out of the exemptions set forth in 11 U.S.C. section 522(d). 735 ILCS 5/12–1201.

debtors from judgment, attachment, or distress for rent. 735 ILCS 5/12–1001. Subsection 12–1001(f) contains the sole reference to annuity contracts under this section. It exempts:

> (f) All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, or to a child, parent, or other person dependent upon the insured, whether the power to change the beneficiary is reserved to the insured or not and whether the insured or the insured's estate is a contingent beneficiary or not[.]

735 ILCS 5/12–1001(f) (emphasis added).

■ When interpreting Illinois statutes, the Court need look no further than the statutory language itself when that language is clear and unambiguous. *E.g., In re Bateman,* 157 B.R. 635, 638 (Bankr.N.D.Ill.1993) (citing *Matter of Barker,* 768 F.2d 191, 194–95 (7th Cir.1985); *In re Marriage of Logston,* 469 N.E.2d 167, 171 (Ill.1984)). That is the case here. It is clear that the provision in question exempts, first, all insurance proceeds payable to a delineated dependent of the deceased insured by reason of the insured's death, *id.* at 638, and, second, the cash surrender value of life insurance policies, endowment policies and annuity contracts if that cash value is payable to a debtor who is either a delineated dependent of the insured under the policy or contract, or the owner of the policy or contract. *Id.* at 638–39.

Here, the periodic payments to Mr. Simon are not proceeds payable by reason of death. Additionally, the record does not reflect, in the first instance, that the annuity contract provides cash surrender value.[10] And, even if the Court assumes, *arguendo,* that cash value is provided for in the annuity contract, there is no evidence before the Court suggesting that the cash surrender value belongs to either Mr. Simon or his wife, who have no legal or equitable interests in the annuity.

■ Another reference to annuity contracts appears in 735 ILCS 5/12–1006[11] which governs exemptions for retirement plans. When considered in context, it is clear that the provision in question is concerned with annuities used in retirement planning and is not intended to encompass an annuity established to fund a structured tort settlement. *See, e.g., In re Johnson,* 108 B.R. at 242; *In re Simon,* 71 B.R. 65, 65–66 (Bankr.N.D.Ohio 1987). Debtors have made no showing whatsoever that the annuity at issue is a retirement plan within the meaning

---

**10.** In fact, the annuity contract is not a part of the record.

**11.** This section provides in its entirety:

> Exemption for retirement plans. (a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, *annuities,* benefits, distributions, refunds of contributions, or other payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.
>
> (b) "Retirement plan" includes the following:
> (1) a stock bonus, pension, profit sharing, *annuity,* or similar plan or arrangement, including a *retirement* plan for self-employed

individuals or a simplified employee pension plan;
> (2) a government or church retirement plan or contract;
> (3) an individual retirement *annuity* or individual retirement account; and
> (4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.
> (c) A retirement plan that is (i) intended in good faith to qualify as a retirement plan under the applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended, is conclusively presumed to be a spendthrift trust under the law of Illinois.
> (d) This Section applies to interests in retirement plans held by debtors subject to bankruptcy, judicial, administrative or other proceedings pending on or filed after August 30, 1989.

735 ILCS 5/12–1006 (footnotes omitted and emphasis added).

of section 5/12–1006 or anything but a fund for the payment of personal injury damages.

■ Other than the "wild card" exemption provision, 735 ILCS 5/12–1001(b), subsection 12–1001(h)(4) appears to be the only exemption provision which offers relief for the debtors. It provides that a debtor may exempt "[t]he debtor's right to receive, or property that is traceable to … a payment, not to exceed $7,500 in value, on account of personal bodily injury of the debtor or an individual of whom the debtor was a dependent[.]" 735 ILCS 5/12–1001(h)(4). The fact that an annuity was purchased by Beneficial to fund the payments to Mr. Simon does not alter their character as payments on account of personal bodily injury within the specific meaning of subsection 12–1001(h)(4). *See, e.g., In re Johnson*, 108 B.R. at 242–44; *In re Simon*, 71 B.R. at 66–67. The Court finds, therefore, that the periodic payments are property of the bankruptcy estate and must be turned over to the trustee subject to debtors' rights of exemption under subsection 12–1001(h)(4) and the "wild card" exemption provision. 735 ILCS 5/12–1001(b).